SHAVER WAGON AND CARRIAGE COMPANY V. HALSTED
*et al.*

1.  Equity : JURISDICTION : PRIORITY OF RIGHTS TO FUND : ATTACHMENT
AND GARNISHMENT.   Questions as to the priority of the rights of
creditors to the funds of an insolvent are purely equitable, and the
fact that they grow out of attachment and garnishment proceed-
ings is no reason why they should not be tried in equity.

2.  Insolvency : PRIORITY OF CLAIMS : ASSIGNMENT AND GARNISHMENT.
Defendant's property was destroyed by fire, and he became insol-
vent.   He assigned to his wife certain policies of insurance on the
burned property, the proceeds to be applied, first, to the payment
of certain debts secured by the policies, and the residue to be
applied in payment of his note to his wife, which note, however,
was without consideration.   While the wife thus held the poli-
cies, she and the insurance companies were garnished by plaintiff
upon execution against the husband, and the companies deposited
the money due on the policies in court, subject to its order for
distribution.   After this the wife assigned the policies to a bank to
secure her indebtedness to it, a part of which was for money bor-
rowed to pay the claims originally secured by the policies.   After

this she gave to D. an order on the bank for a sum due to him from her husband, and this order, together with her indebtedness to the bank, exhausted the proceeds of the policies. At still later dates, other creditors of the husband levied upon the same fund by attachment. *Held* that, as between plaintiff and D. and subsequent attaching creditors, plaintiff by its garnishment obtained the first right, in point of time, to the fund, and the first, also, in equity ; that subject to this, and subject also to the indebtedness due the bank, D. was next entitled to have his order paid out of the fund,—said order operating as an equitable assignment to him, subject to said prior claims.

*Appeal from Webster District Court.*—HON. O. B. AYRES, Judge.

FILED, OCTOBER 30, 1889.

THIS cause and four other cases, involving what is claimed to be similar questions, were tried at one time, in the court below, as equitable actions. They involve conflicting claims of creditors to priority in the assets of the defendant D. W. Halsted, who failed in business about February, 1887. The plaintiffs in the actions are creditors, who base their claims upon certain attachments by garnishment. Other creditors intervened in the actions, and claim under certain orders of an assignee of Halsted, upon the alleged ground that the orders appropriated the assets in controversy to the payment of their claims. There was a decree in favor of the plaintiffs, and the intervenors and defendant H. F. Halsted appeal.

*Wright & Farrel*, for appellants.

*A. N. Botsford, Healey & Healey* and *Dolliver & Moore*, for appellees.

ROTHROCK, J.—I.  For some years prior to February 5, 1887, the defendant D. W. Halsted was engaged in the business of selling agricultural implements and farm machinery at the city of Fort Dodge. On said day his place of business and his stock of merchandise were destroyed by fire. He was largely in debt. He

held four policies of insurance against loss by fire in the sum of two thousand dollars each. Immediately after the fire he consigned said insurance policies to his wife, H. F. Halsted. The insurance was in part for the benefit of certain persons who were the owners of implements and machinery, which the said Halsted had in his possession for sale on commission, and some of which had been sold. It was provided in said assignment that said H. F. Halsted should pay for said commission goods, and that the balance due on said policies should be applied on a promissory note of five thousand dollars held by H. F. Halsted against said D. W. Halsted. H. F. Halsted was indebted to the First National Bank of Fort Dodge, defendant, in the sum of four thousand dollars. Some of this indebtedness was for money borrowed to pay some of the claims for the commission goods, which were covered by the policies of insurance. On the thirtieth day of July, 1887, said H. F. Halsted assigned the policies of insurance to said bank as collateral security, and on the fifth day of August in the same year she gave an order to the bank to pay one Garmoe four hundred and ten dollars out of the avails of the insurance policies, and on the twenty-fifth day of the same month she gave an order to D. D. Halsted on said bank for the payment of some thirty-six hundred dollars. The sums intended to be secured by these orders were claims against D. W. Halsted as well as against H. F. Halsted, his wife. It will thus be seen that by the assignment of the policies to the bank, and by the subsequent orders to pay the claims of Garmoe and D. D. Halsted from the proceeds of the policies, H. F. Halsted abandoned the appropriation of any of the insurance money for the payment of any part of the five thousand dollars held by her against her husband. The plaintiff is a creditor of D. W. Halsted, and on the eleventh day of May, 1887, recovered a judgment against him. Execution was issued on the judgment, and H. F. Halsted was garnished on the seventeenth of that month and the insurance companies were garnished on the execution at different dates in that month

and in the following month of June. Another execution was issued on the thirtieth day of November; 1887, and the bank was garnished on the same day. Actions were commenced on the claims of the other creditors, plaintiffs herein, after all of the assignments above referred to were made, and no attempt was made by attachment to subject the proceeds of the policies to the payment of said plaintiffs' claims until in November and December, 1887. It appears that the insurance companies gave no attention to the garnishments, but paid the avails of the policies to the clerk of the court to abide the decision of the court. The bank answered, setting up the facts as above stated; and H. F. Halsted answered, claiming to be the owner of the insurance policies by the assignment to her. D. D. Halsted assigned his claim to the proceeds to B. M. Halsted, his wife; and Garmoe and B. M. Halsted intervened in the actions, and claimed that, under their orders upon the fund, they were entitled to priority over the plaintiffs.

Some question is made by counsel as to the right of plaintiffs to maintain the actions, and try them as equitable proceedings. The pleadings filed by the creditors attacking and controverting the answers of the garnishees, and the intervention of the holders of the orders upon the fund, presented equitable issues; and we can see no reason why such issues could not be properly tried, as thus made up. The questions presented were purely equitable, and because they grew out of attachment and garnishment proceedings is no reasⁿns why they should be dismissed. The court had complete jurisdiction of the parties and of the subject-matter, and was authorized to proceed and try and determine the causes.

1. EQUITY: jurisdiction: priority of rights to fund: attachment and garnishment.

II. Our attention is next directed to the question whether the transfer of the policies from D. W. Halsted to his wife, so far as the assignment or transfer purported to be for her benefit, was a fraud upon the creditors of D. W. Halsted. It is not necessary to set out the evidence on this branch of the case. It is

enough to say that it appears that the wife had no valid claim against her husband. The transaction appears to have been, in its inception, part of a plan to allow the wife to profit by a claim which was without any merit as against the creditors of the husband. We have rarely been called upon to consider a case where a transaction of this kind has been so clearly shown to be fraudulent as to creditors.

III. There is really but one debatable question in the case, and that is whether the plaintiffs, or any of them, are entitled to priority over the claim of B. M. Halsted, the assignee of D. D. Halsted, to whom the order appropriating part of the proceeds of the insurance was given. It appears that the claim of Garmoe was recognized by the court, and provided for in the decree, and he does not appeal. We have had very great difficulty in arriving at the precise facts in the case, and have been compelled to rely to some extent upon the statements of counsel in argument as to the essential and controlling facts upon the real question in the case. One material fact is that there is no evidence in any way controverting the validity of the claim of D. D. Halsted upon which the order on the bank was made. On the contrary, it appears that it was based upon actual cash paid to D. W. Halsted, and used in carrying on the business. D. D. Halsted was the father of D. W. Halsted, but there is no evidence that he intended to make an advancement to him. On the contrary, he took promissory notes for the money loaned, and the loan was made and the notes taken long before the goods were destroyed, and, for aught that appears, before any one apprehended that D. W. Halsted would fail in business. And there is nothing shown in evidence touching his acts and conduct after the fire and failure from which it can fairly be found that he should be charged with fraud so as to invalidate his claim as between him and other creditors. We think it may fairly be said he acted in good faith in taking the order from H. F. Halsted by which the avails of the policies

*2. INSOLVENCY: priority of claims: assignment and garnishment.*

were appropriated to the payment of the debt due to him. In pursuance of this order, he deposited his notes with the bank, where they remained for payment when the money should be paid to the bank. There can be no doubt that the order, taken in good faith, operated as an equitable assignment of the proceeds of the insurance after payment of the debt due the bank, and the claims arising out of the commission goods. This must surely be so as to all of the plaintiffs except the Shaver Wagon and Carriage Company, because they had not even commenced any actions when the orders were given. These claims had not in any way attached to the insurance policies, nor to their proceeds, until long after the orders were made. It is to be remembered, too, that the orders were given, and the notes were deposited with the bank, at the instance of D. W. Halsted, the real owner of the policies.

The right to priority between the Shaver Wagon and Carriage Company and B. M. Halsted remains to be considered. It is well settled that no attaching creditor can acquire through his attachment a higher or better right to the property or assets attached than the defendant had when the attachment was levied, unless he can show some fraud or collusion by which his rights have been impaired; and this is equally as applicable where the lien is acquired by garnishee process, as when the property is directly seized. *Thomas v. Hillhouse*, 17 Iowa, 67; Drake, Attachm., sec. 223. But the Shaver Wagon and Carriage Company garnished the defendant H. F. Halsted and the companies before she gave the order to D. D. Halsted. She was the proper person to garnish, because, by the assignment of the policies to her, she held the legal title thereto, and, in the absence of interference by creditors, she had the right to collect and control the proceeds. We incline to think that, when the insurance companies and Mrs. Halsted were garnished, the plaintiff acquired a lien upon the assets or proceeds of the policies, and that Mrs. Halsted had no right nor power to dispose of the money by the order to D. D. Halsted. The fund was then, in

a certain sense, in the custody of the law; and in the race between creditors it seems to us that, if the attachment was a lien on what the defendant and garnishee really had, it follows that the order on the fund was valid only upon any balance which had not been seized by the process of attachment. And it is to be remembered that when Mrs. Halsted was garnished she was not merely a debtor of her husband. She had control of property belonging to him, and she had no right to make herself his debtor by disposing of the property, and compelling creditors to take merely personal judgment against her. And, as the insurance companies paid the fund in controversy into court to abide the result of the litigation, the right of the plaintiff to a sufficient amount of the fund to pay its debts became complete by reason of the garnishment. It is only where a debtor of the defendant in execution is garnished that the relation of debtor and creditor exists between the creditor and the garnishee. *Montrose Pickle Co. v. Manufacturing Co.*, 76 Iowa, 172. Our conclusion is that the decree in favor of the plaintiffs, the Shaver Wagon and Carriage Company, should be affirmed, and as to the other plaintiffs it should be

REVERSED.