ALLAN PACKER, AND H. J. BENSON v. A. T. CRARY, THE
    MARSHALLTOWN STATE BANK, Garnishee, AND GEORGE H.
    ADAMS, Intervener and Appellant.

Principal and Agent:   DEPOSIT BY AGENT OF PRINCIPAL'S FUNDS:
1    RIGHTS OF PRINCIPAL.   Where an agent deposits funds of his
    principal in a bank to his own account the principal has the
    right to the same as against the agent or the bank, even
    though mingled with funds of the agent.

Same. The fact that an agent, after depositing funds of his prin-
2    cipal in his own name, checks from the general account that
    portion of the funds belonging to him individually, will not
    deprive the principal of his right to assert his claim to the
    balance as his own property.

Garnishment:   TRUST FUND:   RIGHTS OF CREDITORS.   Where the
3    owner of cattle places them with a third person to fatten and
    sell, with an agreement to account for the proceeds after de-
    ducting expenses, and the owner subsequently gives his credi-
    tor an order for the proceeds, which is recognized by the third
    party, such fund is in the nature of a trust fund, the legal
    title to which is in the owner, and his assignee may recover
    the same as against an attaching creditor of the third party.

*Appeal from Marshall District Court.—*HON. OBED CAS-
                            WELL, Judge.

            SATURDAY, OCTOBER 17, 1903.

    PLAINTIFFS brought action against defendant Crary,
aided by attachment, and served notice of garnishment on
the Marshalltown State Bank, as a debtor of Crary, hold-
ing funds of his on deposit.   Judgment was rendered in
this action in favor of plaintiffs, for $520 and costs, and it
was agreed that the garnishee had funds of Crary on de-
posit to the extent of $767.90.   But before the rendition
of judgment against Crary, and before any judgment had
been rendered against the bank as granishee, Adams in-
tervened, claiming a right to the fund in the bank by

assignment from one Hall, alleged to be the equitable owner of such fund. Issue was taken on the petition of intervention, and such issue was tried as in equity, with the result that the court dismissed the petition of intervention. Intervener appeals.—*Reversed.*

*Henry Stone* for appellant.

*Meeker & Meeker* and *Binford & Snelling* for appellees.

McCLAIN, J.—There is no real controversy as to the facts, and, so far as involved in the decision on the petition of intervention, they are substantially as follows: Hall was the owner of certain cattle, purchased to some extent with money of Adams, the intervener, and he was indebted to Adams to an amount largely exceeding the value of the cattle. Hall delivered these cattle to Crary to be fattened and marketed, with the agreement that Crary should account to Hall for the proceeds, after deducting expenses and commissions. Subsequently Hall gave to Adams an order on Crary for such proceeds, and Crary recognized this order, and assured Adams that he would turn the proceeds over to him in pursuance thereof. Crary deposited the proceeds of the cattle—about $1,150 —in the bank to his own general account. It is uncertain, under the evidence, whether a portion of the proceeds were checked out by Crary to Hall's benefit, or not, but it is undisputed that Crary is indebted either to Hall or to Adams, by virtue of the order, for an amount exceeding the balance in the bank to Crary's credit as net proceeds of Hall's cattle; and the sole question is whether Crary's creditors, by virtue of the garnishment, have a right to this fund as against the intervener, Adams, claiming under the order on Crary given to him by Hall, and recognized by Crary before the garnishment proceedings were instituted. Although the proceeds of the cattle were

deposited by Crary to his own individual account, nevertheless, as Crary was not the owner of the cattle, but merely the agent of Hall for the sale thereof, the proceeds, if they can be reached, belong to Hall, or to Adams under the order given to him by Hall, and not to Crary.

The proceeds of the cattle, in Crary's hands, were in one sense a trust fund; that is, a fund as to which Crary had the apparent legal ownership, but to which Hall had the legal or equitable right. There can be no controversy as to the proposition that, when an agent deposits his principal's funds in a bank in the agent's individual name, the principal has the right to such funds as against the agent or the bank, and it is immaterial that the funds have been mingled with other funds of the agent. As is said by the court in *Van Alen v. American Nat. Bank*, 52 N. Y. 1, 7: "When a trustee deposits trust moneys in his own name in a bank with his individual money, the character of the trust money is not lost, but it remains the property of the *cestui que trust*. If such money can be traced into the bank, and it remains there, the owner can reclaim it. When deposited, the bank incurred an obligation to repay it, which is not lessened or impaired because it incurred at the same time an obligation to pay other money belonging to the agent individually. If A Sells B's horse for $100, and puts it in a box with $100 of his own, the $100 of B may be claimed by him, although the particular bills constituting it could not be identified. So, if the same $200 were deposited in a bank to the credit of A, the title of B to $100 would not be affected by the association, and the bank would owe that money to B, in equity, although it owed A also for his individual money. These views are not only consonant with integrity and justice, but are fully sustained by authority."

1. DEPOSIT by agent of principal's funds: rights of principal.

The fact that, after depositing the socalled trust fund the agent checks out from his individual account such por-

tion of his general deposit as belongs to him in his indi-

2. SAME.          vidual right, leaving a balance representing
all or a part of the so-called trust fund, does
not deprive the principal of the right to assert his claim
to such balance as his own property. *Pennell v. Deffell*, 4
De Gex, M. & G. 372, cited and quoted from in *Van Alen
v. American Nat. Bank, supra.* In *Farmers' & Mer-
chants' Nat. Bank v. King*, 57 Pa. 202 (98 Am. Dec. 215),
it appeared that an agent had deposited funds of his prin-
cipal, with his own funds, in a bank, and that creditors of
the agent had garnished the bank for his deposit, which
included not only the fund of the plaintiff in that case, but
also of other principals.    After the garnishment the prin-
cipal had demanded so much of the funds of his agent as
represented the deposit of the principal's money.    The
court said:  "It is undeniable that equity will follow a
fund through any number of transmutations, and preserve
it for the owner so long as it can be identified.  And it
does not matter in whose name the legal right stands.    If
money has been converted by a trustee or agent into a
chose in  action, the legal right to it may have been
changed, but equity regards the beneficial ownership.  It
is conceded—for the cases abundantly show it—that, when
the bank received the deposits, it thereby became a debtor
to the depositor.    The debt might have been paid in
answer to his checks, and thus the liability have been
extinguished, in the absence of interference by his prin-
cipals to whom the money belonged.  But surely it can-
not be maintained that when the principals asserted their
right to the money before its repayment, and gave notice
to the bank of their ownership, and of their unwillingness
that the money should be paid to their agent, his right to
reclaim it had not ceased.    A bank can be in no better sit-
uation than any other debtor.   *   *   *   But it is insisted
there was no earmark to the money.    What of that, if the
money can be followed, or if it can be traced into a sub-

stitute?    This is often done through the aid of an ear-
mark.    But that is only an index enabling a beneficial
owner to follow his property.    It is no evidence of owner-
ship.    An earmark is not indispensable to enable a real
owner to assert his right to property, or to its product or
substitute.    Evidence of substantial identity may be at-
tached to the thing itself, or it may be extraneous.    It is
freely admitted that if a trustee or agent receive money
of a *cestui que trust* or principal, and mingle it with his
own so that it cannot be followed, the *cestui que trust* or
principal cannot recover it specifically.    This is not be-
cause the ownership is changed, but because a court
cannot lay hold of the property as that of the owner.
But in regard to money, substantial identity is not oneness
of pieces of coin or of bank bills.    If an agent to collect
money puts the money collected into a chest where he has
money of his own, he does not thereby make it all his own,
and convert himself into a mere debtor to his principal.
The principal may by law claim out of the chest the sums
which belonged to him before the admixture.''

It must be borne in mind that the controversy here is
not one as to the right of the principal to a preference as
against other creditors of an insolvent bank, in which the
principal's money has been deposited by the agent in his
own name; nor is it as to the right of the principal to fol-
low the funds into the hands of a creditor or assignee of
the agent who has received it without knowledge of the
nature of the fund, and in extinguishment of some debt or
obligation of the agent.    The plaintiffs acquired no higher
right by virtue of the garnishment under their attachment
proceeding than that of their debtor, and if Crary was not
entitled, as against intervener, to the money remaining in
the bank to Crary's credit, after intervener
**3. GARNISH-
MENT: trust
fund: rights of
creditors.** had    asserted    and    established · his' claim
thereto, then plaintiffs have no right to the
same fund by virtue of the garnishment proceeding.

*Howe v. Jones*, 57 Iowa, 130; *Shaver Wagon & Carriago Co. v. Halsted*, 78 Iowa, 730. That the assignment from Hall to intervener entitled intervener to assert any right to the proceeds of the cattle which Hall could have asserted is unquestionable. Whether this assignment was legal or equitable is immaterial, for it gave Crary a right to the proceeds of the cattle—a right which the trial court, adjudicating the equitable issues arising under intervener's petition, should have recognized. *Des Moines County v. Hinkley*, 62 Iowa, 637. Indeel, it was wholly immaterial, so far as the rights of the parties in this case were involved, as to whether Crary had received notice of, and acquiesced in, the assignment, or not. No creditor of Crary, without any lien or claim as to this specific fund, had a right to appropriate it to the payment of Crary's debts, as against the conclusive proof that the fund did not belong to Crary at all, but belonged to some one else.

The decree dismissing intervener's petition is therefore REVERSED.