THE FIRST NATIONAL BANK OF KANSAS CITY, MISSOURI, Appellant, v. THE MOUNT PLEASANT MILLING COMPANY, *et al.*

**Bill of Lading:** TRANSFER OF TITLE: *Attachment.* A bank which discounts a draft with bill of lading attached, drawn against a shipment, and credits the amount thereof to the drawer, acquires an interest in the property shipped, paramount to that of a subsequent attaching creditor of the drawer and shipper, though it advanced him no money before the attachment was effected; although this is not the rule in the sale of negotiable paper, and though a bill of lading is quasi negotiable, and is by a statute made negotiable by indorsement and delivery, like bills of exchange. Citing *Oddie v. Bank*, 45 N. Y. 740; *Cragie v. Hadley*, 99 N. Y. 131; *Bank v. Burkhardt*, 100 U. S. 636; *Bank v. Gregg*, 28 N. E. Rep. (Ill. Sup.) 839; *Neill v. Produce Company*, 23 S. E. Rep. (W. Va.) 702; *Bank v. Crocker*, 111 Mass. 163.

*Appeal from Henry District Court.*—Hon. T. M. Fee, Judge.

Wednesday, October 27, 1897.

Action at law for the conversion of two cars of wheat. The defendants claimed the property under a writ of attachment issued in an action wherein the Milling Company was plaintiff and the Moffatt & Lee Commission Company was defendant, and alleged that plaintiff was not the owner thereof, but that it belonged to the Commission Company. The trial court directed a verdict for the defendants, and plaintiff appeals.— *Reversed.*

*Power, Huston & Power* and *W. I. Babb* for appellant.

*McCoid & Finley* and *Blake & Blake* for appellees.

Deemer, J.—The appellant will be designated as the "Bank," the appellee as the "Milling Company," and the Moffatt & Lee Commission Company as the "Commission Company." January 3, 1895, the Commission Company, having contracted to sell and deliver two cars of No. 2 wheat to the Derby Roller Mills, of Burlington, Iowa, drew its draft on the Roller Mills for the net proceeds, in favor of plaintiff; delivered the bill of lading for the wheat, indorsed in blank, with weighmaster's certificates attached, to the plaintiff; and at the same time received credit on the books of the Bank for the amount of the draft, less one dollar and twenty cents discount or exchange. The bank at once entered the draft upon its books, charged the same to its correspondent at Burlington, Iowa, and sent it forward, with the attached papers, for payment. The wheat was shipped immediately, and while enroute, and at Mt.

Pleasant, Iowa, in the custody of the carrier, was seized by the sheriff on a writ of attachment in favor of the Milling Company and against the Commission Company. The Derby Roller Mills learned of the seizure of the wheat, and refused to pay for the same. The draft was protested and returned to the Bank. The Bank thereupon demanded the wheat from the sheriff, but he refused to surrender. This action was then commenced.

As a general rule, a bill of lading represents the goods while in the possession of the carrier for transportation, and its assignment operates as a transfer of the title, and a symbolical delivery of property. *Garden Grove Bank v. Humeston & S. R'y Co.*, 67 Iowa, 526; *Weyand v. Railway Co.*, 75 Iowa, 573; *Ayres, Weatherwax & Reed Co. v. Dorsey Produce Co.*, 101 Iowa, 141.

The statutes of Missouri (Rev. St. 1879, sections 558, 559), where the transfer was made, also provide that:

"558.   All bills of lading, transportation receipts and contracts of affreightment issued or given by any person, boat, railroad or transportation or transfer company, for goods, wares, merchandise, grain, flour or other produce, shall be and are hereby made negotiable by written indorsement thereon, and delivery in the same manner as bills of exchange or promissory notes, and no printed or written conditions, clauses or provisions shall in any way limit the negotiability or effect of any negotiation thereof, nor in any manner impair the rights and duties of the parties thereto, or persons interested therein; and every such condition, clause or provision purporting to limit or affect the rights, duties or liabilities created or declared in this chapter, shall be void and of no force or effect.

"How Transferred—Lien Created—Exception.

"559.   All bills of lading and transportation receipts of every kind, given by any carrier, boat, vessel,

railroad, transportation or transfer company, may be transferred by indorsement in writing thereon, and the delivery thereof so indorsed; and any and all persons to whom the same may be so transferred shall be deemed and held to be the owner of such goods, wares, merchandise, grain, flour, or other produce or commodity, so far as to give validity to any pledge, lien or transfer given, made or created thereby, on the faith thereof, and no property so stored or deposited, as specified in such bills of lading or receipts, shall be delivered, except on the surrender and cancellation of such receipts and bills of lading."

Appellee contends, however, that the Bank did not purchase the bill of lading; that it has no lien upon it or upon the property, except to the extent of advances made; and that as it did not advance anything on the strength of the bill of lading, but merely gave the Commission Company credit upon its account,—which at the time showed a balance in its favor,—it cannot recover.   This contention is based upon a rule applicable to the transfer of negotiable paper, to the effect that a mere discount and credit do not of themselves amount to a *bona fide* purchase for value.   The rule is announced and applied in the following, among other, cases: *Dresser v. Construction Co.*, 93 U. S. 92; *Mann v. Bank*, 30 Kan. 412 (1 Pac. Rep. 579); *Fox v. Bank*, 30 Kan. 444 (1 Pac. Rep. 789).   The trouble with this position, as applied to the facts of this case, lies in the assumption that a bill of lading is to be treated in all respects as a negotiable instrument, and subject to the same rules, as to its transfer and negotiation. The authorities speak of such an instrument as "quasi negotiable," and the statutes of Missouri say that it is negotiable by written indorsement and delivery, in the same manner as bills of exchange.   What is meant by this, as we understand it, is to give to such documents negotiability and assignability by indorsement and

delivery, so that the indorsee may sue thereon in his own name. It does not necessarily follow that, because a statute has made bills of lading negotiable, all the consequences of an indorsement and delivery of bills and notes before maturity ensue, or are intended to result, from such negotiation. Bills of lading represent property, and, when indorsed or assigned, operate as a symbolical delivery to the indorsee or assignee of the property covered thereby. Such a transfer is quite different from the negotiation of a bill of exchange or a promissory note, which circulates in the commercial world as an evidence of money. *Shaw v. Railroad Co.*, 101 U. S. 557, 25 Lawy. Ed. 892; *National Bank of Commerce v. Chicago, B. & N. R. Co.*, 44 Minn. 224 (46 N. W. Rep. 560). Thus it has been held that the indorsement and delivery of a bill of lading pass the property, when it is intended to so operate, in the same manner as a direct delivery of the goods would do if so intended. *Mechanics & T. Bank v. Farmers & M. National Bank*, 60 N. Y. 47; *Gardener v. Howland*, 2 Pick. 599; *Brower v. Peabody*, 13 N. Y. 121; *Forbes v. Railroad Co.*, 133 Mass. 154; *Lickbarrow v. Mason*, 1 Smith, Lead. Cas. 848, and note. So, where the shipper attaches a bill of lading to a draft for the price, and indorses the same to one who discounts the draft, the goods are thereby pledged for the payment of the draft, and a special property therein passes to the transferee. *Conrad v. Insurance Co.*, 1 Pet. 445; *Bank v. Crocker* 111 Mass. 163; *Holmes v. Bank*, 87 Pa. St. 525; *Bank v Wright*, 48 N. Y. 1; *Hathaway v. Haynes*, 124 Mass 311; *Dows v. Bank*, 91 U. S. 618; *Emery v. Bank*, 25 Ohio St. 360; *Bank v. Kelly*, 57 N. Y. 34. And the possession of a bill of lading, whether indorsed or not, is *prima facie* evidence of title, as against any person not showing a better title. *Railroad Co. v. Phillips*, 60 Ill. 190; *Pratt v. Parkman*, 24 Pick. 42; *City Bank v. Rome, W. & O. R. Co.*, 44 N. Y. 136.

The question here presented is not whether the indorsee takes the bill of lading free from equities or defenses in the hands of the original holder, but whether he has a better title to the grain than an attaching creditor of the indorser. If A should purchase a horse from B, and secure the delivery thereof upon a promise to pay for the same at some future time, he certainly has better title than C, who attaches the horse as the property of B after the delivery to A. So when the plaintiff in this case cashed the draft, and took the assignment of the bill of lading from the Commission Company, it secured a better title than the Milling Company, which attached the grain while in transit; and the fact that, when the grain was attached, it had not been called upon to make any direct advances to the Commission Company, is not, in itself, of controlling importance. *Bank v. Dearborn*, 115 Mass. 219. Having given the credit to the Commission Company before the grain was attached, and having secured title to the grain through the indorsement of the bill of lading, it obtained title to the draft and to the bill of lading, and had the right to follow the grain, which had been symbolically delivered as collateral to the draft which it had discounted. *Oddie v. Bank*, 45 N. Y. 740; *Cragie v. Hadley*, 99 N. Y. 131 (1 N. E. Rep. 537); *Bank v. Burkhardt*, 100 U. S. 686; *Bank v. Gregg*, 138 Ill. 596 (28 N. E. Rep. 839). If the bank had simply undertaken the collection of the purchase price as agent of the Commission Company, then the title to the grain remained in the latter company, and it was subject to attachment until delivered to and paid for by the Roller Mills. But if the Bank purchased the draft, and accepted the bills of lading as collateral security, or if it purchased the grain outright, and accepted the bills of lading as evidence of this purchase, or if, in consideration of the indorsement and delivery of the bills of lading, it made or agreed to make certain

definite future advances, it acquired a title to the grain
which could not be defeated by a subsequent attach-
ment. *Neill v. Produce Co.*, 41 W. Va. 37 (23 S. E.
Rep. 702). As said in the case of *Bank v. Crocker*, 111
Mass. 163: "Whether it [the transfer] should be
regarded as a sale, a pledge, or a mortgage, there was a
sufficient delivery to give to the plaintiff a special prop-
erty, which they could enforce by suit against any
wrongdoer."

In directing a verdict and judgment for the Milling
Company the court erred. Each party moved for a
verdict at the conclusion of the evidence, and it is con-
tended by appellee that, in so doing, appellant waived
the right of submission to the jury, and that the order
and judgment of the court have the same force and
effect as the finding of a jury upon all questions of fact
involved in the case. This seems to be the rule estab-
lished by the weight of authority. 6 Encyclopedia
Pleadings and Practice, page 703, and cases cited.
Expressing no opinion at this time upon the question of
law thus presented, it is sufficient to say that we do not
think there was sufficient evidence to justify the court
in directing a verdict for the defendant. If a jury had
found for the defendants upon the evidence adduced,
the court should have set aside the verdict as without
support. The judgment of the district court is
REVERSED.