JOHN DOLESE *et al. v.* JAMES C. MCDOUGALL *et al.*
and
CLEVELAND STONE CO. *v.* JAMES C. MCDOUGALL *et al.*

*Opinion filed October 16, 1899—Rehearing denied December 13, 1899.*

1. EVIDENCE—*when evidence does not show valid agreement by creditors to pro rate claims.* A valid and binding agreement between creditors and the members of an insolvent firm to pro rate the assets is not shown by evidence that the result of the creditors' meeting was not a consummated contract, but merely the partial preparation of a written agreement which was never signed.

2. APPEALS AND ERRORS—*objections to master's findings must be made below.* Objection cannot be made in the Appellate Court to a finding by the master which was not objected to, when no exception to his report was urged before the court.

3. ASSIGNMENT—*contractor's order on village is an equitable assignment of amount mentioned therein.* An order given upon a village by a contractor to a creditor for work done upon a local improvement operates as an equitable assignment to the payees of the amounts mentioned in the orders of the special assessment fund to which the contractor is entitled.

4. SAME—*what sufficient to operate as an assignment of a part of a special assessment fund.* A written order given upon a village by a contractor, and directing that its amount be charged to the contractor's account on a specified local improvement constructed by

special assessment, is sufficient to operate as an equitable assignment of a part of the special assessment fund, from which, alone, under the statute, the contractor could be paid.

5. INJUNCTION—*when technical violation of an injunction is harmless.* That warrants drawn in pursuance of orders given by a contractor upon a special assessment fund were issued in technical violation of an injunction cannot be complained of by a judgment creditor of the contractor, where those receiving the warrants were equitable owners by assignment, to the amount of their orders, of the fund, which, to that extent, could not be applied on the judgment.

*Dolese* v. *McDougall,* 78 Ill. App. 629, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

The firm of McDougall & Hammond was engaged in the business of contracting for street work, in which they employed labor and used materials for plumbing, grading, paving, etc. They had made a contract with the village of South Evanston for curbing, grading and paving certain of its streets, including West Lincoln avenue. In October, 1891, the firm was found to be financially unable to complete its contracts and meet its existing liabilities for labor and material. Dolese & Shepard claimed an indebtedness against it of $15,076.93, about $4000 of which was evidenced by its judgment note. In the latter part of October and early in November the creditors generally began to press the collection of their claims. The liabilities aggregated about $40,000. On November 5 the creditors representing $38,000 of that indebtedness held a meeting in the office of Dolese & Shepard, at which McDougall & Hammond were present or represented, for the purpose of bringing about an amicable adjustment of all the liabilities of the firm. Dolese & Shepard took part in that meeting. Whether or not an agreement to that effect was then consummated, binding upon those present, is one of the principal questions in the present litigation. It appears, however, that soon thereafter sev-

eral of the creditors who were present and participated in the negotiations proceeded to secure the payment of their debts without reference to any action taken at the creditors' meeting.

On November 14 Dolese & Shepard caused a judgment to be entered on their note for $4017, and on the 16th, execution thereon having been returned *nulla bona,* they filed the original bill herein, which in its principal allegations and prayer for relief is an ordinary creditor's bill, asking that McDougall & Hammond be required to answer under oath and make discovery in the usual form of such bills, for the appointment of a receiver, and for an injunction. In addition to McDougall & Hammond, Peck Bros. & Co., E. W. Blatchford & Co., the L. Wolff Manufacturing Company, Oliver D. Peck, Albert D. Saunders, etc., were made defendants. The charge in the bill is, that the last named defendants had wrongfully obtained certain of the assets of the firm, and Olof Vider & Co. had, by collusion with McDougall and the board of trustees of the village of South Evanston, fraudulently obtained from the village its warrants, amounting to $5200, for money due from it to McDougall & Hammond. The contract of the latter with South Evanston is set forth by the bill, with the allegation that on October 24, 1891, the firm assigned to the complainants all their right, title and interest in and to all moneys, warrants, vouchers, credits or other benefits then due or thereafter to become due from said village of South Evanston by virtue of said contracts and the performance thereof, and did make, constitute and appoint Shepard their attorney to collect from the village officers all such moneys, etc., and to receipt for the same, but that the village, by its president and board of trustees, wrongfully refused to recognize such assignment and power of attorney, and threatened to pay over the money, warrants, etc., included in the assignment, to McDougall & Hammond, or other persons on their behalf, to the injury of

complainants, and alleging that the appointment of a receiver, and an injunction, are necessary to the protection of the complainants' rights.

Immediately upon the filing of the bill a receiver was appointed and a writ of injunction issued and served on the village authorities. Subsequently the appellant the Cleveland Stone Company was permitted to become a party defendant, and, after answer, filed a cross-bill, in which it alleged that at the creditors' meeting of November 5 a valid and binding agreement was entered into by McDougall & Hammond and their creditors then present, that the latter should share *pro rata* in all the assets of the firm, and prayed the enforcement of such agreement. Appellees Frieding & Johnson were allowed to file an intervening petition, setting up that there was due them from the firm $974, for which they had received an order on the village of South Evanston, which had been accepted by it, but payment thereof refused on account of the writ of injunction issued on the original bill.

Issues were formed on the bill, cross-bill and intervening petition, and the cause referred to a master to take proofs and report his conclusions. He found and reported that at the creditors' meeting of November 5, the firm and its creditors made a valid agreement for a *pro rata* payment of the debts of the firm out of its assets, and that the subsequent action of certain of the creditors contrary to that agreement was fraudulent, illegal and void; that such creditors should be required to account for the amounts received by them, and a decree entered carrying into effect said agreement.

The court dismissed the cross-bill of the Cleveland Stone Company, and dismissed the original bill as to Peck Bros. & Co., E. W. Blatchford & Co. and the L. Wolff Manufacturing Company, and found in favor of the claims of Vider & Co., Frieding & Johnson, Edward Johnson and T. B. Blanchard, and, their claims being payable out of moneys raised by a special assessment of the village of

South Evanston, decreed that the village of Evanston, as the successor of the village of South Evanston, should pay the claims if sufficient had been collected, but if not, then *pro rata* so far as the amount collected on the special assessment would permit. It also found and decreed that the issuing of the warrants to the above named parties was not a violation of the injunction; that the title to the fund on which the warrants were drawn had passed to the said parties, respectively, before the warrants were issued, etc. This appeal is by the Cleveland Stone Company and the complainants in the original bill.

CUSTER, GODDARD & GRIFFIN, for appellants Dolese & Shepard.

JOHN S. COOPER, for appellant the Cleveland Stone Company.

ALEXANDER CLARK, LEE, LEE & SCHUCHARDT, GEO. S. BAKER, and CRAFTS & STEVENS, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

If it could be held that there was a valid agreement entered into by the parties at the meeting of November 5, as alleged in the cross-bill, that conclusion would dispose of all issues made on the original bill, hence that branch of the case naturally arises first. While the master reported to the circuit court that the evidence established such an agreement, the court, on exceptions and objections to his report, overruled the finding and dismissed the cross-bill, and that decision has been affirmed by the Appellate Court, both holding that the evidence on that subject failed to prove that the alleged agreement was consummated by the parties, McDougall & Hammond and their creditors. To carry out such a contract would, we think, under all the circumstances of the case, be equitable and just as to the creditors, and there is therefore a natural inclination to do so. We are, however, unable

to find in the record sufficient proof upon which to found such a decision. The only theory upon which the alleged agreement could be given effect would be, that the action of McDougall & Hammond, and their creditors, at that meeting, amounted to an assignment of the assets of the firm for the benefit of all their creditors. It is not claimed that Edward Johnson, one of the creditors, agreed to the proposition to pro rate the assets, nor does the proof show that McDougall so consented. As shown by the opinion of the Appellate Court, (ADAMS, J.,) the result of the meeting was not a consummated contract, but merely a preliminary arrangement for the drafting and circulation of a written agreement, which, though partially written up, was never signed. It is therefore impossible to ascertain just what the real action of the meeting was. The cross-bill being based solely upon the validity and binding force of the alleged agreement, and the proof failing to sustain that agreement, the order of the circuit court dismissing it at the cost of the complainants was properly affirmed by the Appellate Court.

The appellants Dolese & Shepard, complainants in the original bill, insist that the circuit court erred in refusing to enforce the alleged assignment by McDougall & Hammond to them of October 24, 1891. It was held below that they had waived that assignment by participating in the creditors' meeting of November 5. It had been so found by the master, and no objection to that finding was made by the complainants nor exception to his report urged before the court. We think the Appellate Court properly held that it was too late to make the objection there. (*Hurd* v. *Goodrich,* 59 Ill. 450; *Pennell* v. *Lamar Ins. Co.* 73 id. 303; *Jewell* v. *Rock River Paper Co.* 101 id. 57; *Medsker* v. *Bonebrake,* 108 U. S. 66.) This sufficiently disposes of the contention without reference to the question whether the right to insist upon that assignment was waived by the conduct of the complainants prior to the filing of their bill, though we think there is force in the

reasoning of the Appellate Court in its opinion in support of the conclusion that there was such waiver.

These appellants also insist that the circuit court erred in sustaining the claims of Olof Vider & Co. and Frieding & Johnson, as against them. McDougall, of the firm of McDougall & Hammond, had given these parties orders on the village of South Evanston on November 14, 1891, to the former for $4619.72 and to the latter for $974, this order specifying that it was "for work done on said special assessment for us." The Appellate Court, we think, properly disposed of this assignment of error, as follows:

"It is not questioned that Vider & Co. and Frieding & Johnson furnished to McDougall & Hammond labor and material for the improvement of West Lincoln avenue, nor is the correctness of the amounts claimed by them, respectively, questioned; but it is objected that warrants were drawn, in pursuance of the orders, in violation of the injunction, and that the order payable to Olof Vider & Co. did not operate as an assignment of any part of the special assessment fund levied for the improvement of West Lincoln avenue. We do not understand that complainants' solicitor questions the power of McDougall to assign the claims of the firm in payment of the firm debts, nor do we think his power in that regard can be successfully denied. (*Hanchett* v. *Gardner*, 138 Ill. 571.) The money raised by the special assessment levied by the village of South Evanston for the improvement of West Lincoln avenue was due to McDougall & Hammond, the contractors, for the making of the improvement. This is not controverted, but is impliedly admitted. The giving the orders operated as an equitable assignment to the payees of the amounts mentioned in the orders, respectively, of the special assessment fund. *Savage* v. *Gregg*, 150 Ill. 161; *Donk* v. *Alexander*, 117 id. 330; *Morgan County* v. *Thomas*, 76 id. 120; *Morris* v. *Cheney*, 51 id. 451; *Chicago Title and Trust Co.* v. *Smith*, 158 id. 417.

"Complainants' counsel object that the order in favor of Olof Vider & Co. did not operate as an assignment of any part of the special assessment fund, for the reason that it does not expressly direct the amount of the order to be paid out of that fund; that the words of the order, 'and charge the same to our acc't. on West Lincoln av.,' are not equivalent to a direction to pay from the proceeds of the West Lincoln avenue assessment. The cases cited by counsel in support of this proposition all relate to orders in which the drawers and drawees were private persons or private corporations, there being no legal limitation on the application of the fund subject to their control, and in this respect they are distinguishable from and inapplicable to the present case. The money due to McDougall & Hammond from the village was for work and labor performed and material furnished for the improvement of West Lincoln avenue in pursuance of a contract between them and the village, and the contract price for the improvement was to be paid for from the proceeds of a special assessment levied by the village.

"When an ordinance of a city or village provides for the making of a local improvement, the ordinance must prescribe 'whether the same shall be made by special assessment, or by special taxation of contiguous property, or general taxation, or both,' (Starr & Cur. Stat. chap. 24, par. 118,) and the improvement cannot be made in any other than the prescribed mode. It is further provided that 'all persons taking any contracts with the city or village, and who agree to be paid from special assessments, shall have no claim or lien upon the city or village in any event, except from the collection of the special assessments made for the work contracted for.' (Starr & Cur. Stat. chap. 24, par. 165.) The orders are evidence that McDougall & Hammond so agreed. The treasurer is required to keep a separate account of each fund and the debits and credits pertaining thereto, (Id. par. 94,) and no fund can legally be expended for any purpose

other than that for which it was appropriated. (Id. pars. 90, 91, 92.) In the case of a special assessment for a local improvement, and if an amount is collected in excess of the cost of the improvement, the excess is to be refunded ratably to the persons by whom the assessment shall have been paid. (Id. par. 65.)

"It is manifest from these provisions that a contractor for an improvement to be made by special assessment can be paid only from the proceeds of the special assessment. The account of the fund to be kept by the treasurer consists of charges to the fund of money paid into the treasury on account of it and credits of warrants drawn against it. The contractor's account with the village necessarily consists of credits for work done on the improvement, and debits for warrants issued corresponding with such credits. Therefore, the direction in the order in favor of Vider & Co., 'charge the same to our acc't. of West Lincoln av.,' was, in effect, a direction to issue a warrant or warrants for the amount of the order on the special assessment fund for the improvement of that avenue. The order could be complied with only in that way.

"It is further contended by complainants' solicitors, that the warrants were issued to Vider & Co. and Frieding & Johnson in violation of the injunction. The orders, as before stated, were delivered to the payees the day of their date, viz., November 14, 1891. The Vider & Co. order was presented to the president of the board of trustees of the village the same day. The Frieding & Johnson order was drafted by W. S. Gates, a member of the board of trustees of the village, chairman of the finance committee of the board and temporarily in charge of the streets, and was then signed 'McDougall & Hammond' by McDougall. By order of the president of the board, warrants were drawn in favor of Vider & Co. and Frieding & Johnson for the amounts specified in the orders and were duly signed. On the evening of November 16, 1891, after the service of the writ of injunction, Mr. Gates re-

ported to the board, then in regular session, the receipt of the orders and what had been done in regard to them, and the board approved the report and directed payment to be made to Vider & Co. and Frieding & Johnson. After such approval, and while the board was still in session, the writ of injunction was read by the village clerk.    November 17, 1891, warrants were delivered to Vider & Co. for the amount of the order. The warrant in favor of Frieding & Johnson was tendered by Mr. Gates to Frieding after the board adjourned, but Frieding told Mr. Gates that they wanted the cash, and requested him to keep the warrant and have it discounted for them. Gates subsequently tore off the signature and returned the warrant to the village clerk.    The court found, as heretofore stated, that the issuing of the warrants was not a violation of the injunction, for the reason that Olof Vider & Co. and Frieding & Johnson were, by virtue of the orders of November 14, 1891, the equitable owners of amounts of the special assessment equal to the amounts of the orders. We are not prepared to say that this finding of the court is erroneous, but, even conceding that there was a technical violation of the injunction, we can not perceive how the complainants could be prejudiced thereby, inasmuch as Vider & Co. and Frieding & Johnson, being the equitable owners of the fund to the extent of their orders, the fund, to that extent, could not be applied in satisfaction of complainants' judgment."

The claims of other creditors are not questioned.

Other questions raised and discussed by counsel in their argument have been considered, but we do not regard any of them as of controlling importance.

The record is very voluminous, and seems to have been very carefully considered by the Appellate Court, and, in our opinion, disposed of in conformity to the law and facts of the case.    Its judgment will accordingly be affirmed.

*Judgment affirmed.*