JAMES C. WALCOTT, and others,

*vs.*

CHARLES F. RICHMAN.

Charles W. Morse, Trustee.          Emeline W. Richman, Claimant.

Penobscot.    Opinion November 16, 1900.

*Trustee Process. Exceptions. Attachment. Sales. R. S., c. 86, §§ 32, 79.*

1.  Strictly, a claimant of funds, attached upon trustee process, cannot have exceptions to the decision of the presiding justice charging the trustee until by proper allegations an issue has been formed between him and the plaintiff.

2.  Where however the plaintiff, the trustee and the claimant afterward file a written stipulation that the law court may nevertheless consider such exceptions and agreeing to abide by its judgment, the law court may in its discretion proceed to determine the questions thus raised.

3.  When a consignor ships merchandise by a common carrier and at the same time negotiates for value a bill of exchange drawn for the price upon the consignee at his previous request, the payee or indorsee of such bill of exchange is entitled to the funds as against a subsequent attaching creditor of the consignor.

4.  Where such consignee takes the goods from the carrier into his own possession and a few days afterward sells them as his own without asking instructions from the consignor, he will be adjudged to have accepted the goods and to have become liable therefor to the holder of such bill of exchange, although he wrote the consignor that the goods were not what he expected.

5.  Upon exceptions in trustee process the law court can examine and determine the whole case as upon appeal.

ON EXCEPTIONS BY CLAIMANT.

Trustee process. At a hearing on the question as to whether or not the alleged trustee should be charged, the presiding justice adjudged the trustee chargeable for the funds in his hands; to this adjudication the claimant of the funds took exceptions and asked that the whole case be considered on the exceptions. The whole testimony, the disclosure of the trustee and his examination were made a part of the exceptions, accompanied with a written stipulation of all the parties submitting the question to the decision of the law court.

*J. D. Rice*, for plaintiffs.

The goods remaining the property of the principal defendant under our statute, they were liable to trustee process. This is true even if the goods could have been attached directly. *Balkham* v. *Lowe*, 20 Maine, 369; *Smith* v. *Cahoon*, 37 Maine, 281; *McDonald* v. *Gillett*, 69 Maine, 271; *Daniels* v. *Marr*, 75 Maine, 397.

Merely receiving the horses in his barn the night before is not necessarily an acceptance, but ·he may have an opportunity to reject them after a reasonable time for acceptance. *Morse* v. *Moore*, 83 Maine, 473. But the claimant's position is no better even if the goods had been accepted, and the horses were at the time the property of the trustee. The doctrine that a written promise to accept a non-existing bill is a virtual acceptance is admitted to be good law; but there are certain conditions to this general principle which modify and govern it. The rule was given in *Coolidge* v. *Payson*, 2 Wheat. (U. S.) 66, and has been followed by our courts. *Gates* v. *Parker*, 43 Maine, 544; *Plummer* v. *Lyman*, 49 Maine, 229.

An inspection of these cases and others following the U. S. decision above cited disclose the following conditions: 1. The promise should describe the bill to be drawn so as to identify and distinguish it from all others. Story on Bills, 249; 3 Kent's Com. 84; *Coolidge* v. *Payson*, supra.

2. The bill must be in accordance with the tenor of the promise. In the case of *Gates* v. *Parker*, supra, the variance from the promise was simply that the draft was made payable to a different person, yet the court said: "Non haec in foedera veni," and ordered a nonsuit.

The facts in the case under consideration are much stronger. The draft not only fails to comply in quantity with the order but also quality, twenty horses having been sent instead of sixteen or eighteen, and instead of good quality they were of an inferior grade. In *Boyce* v. *Edwards*, 4 Pet. (U. S.) 111, so strictly was this condition enforced that an order "to draw for any amount of cotton that he may buy" held not an acceptance, being too indefinite. The bill must be described in terms not to be mistaken. The description must be sufficient to identify the bill when sued on and such as can apply to no other bill; it must result from the promise itself, and can not be aided by any statement on the face of the bill. *Carnegie* v. *Morrison*, 2 Met. 406.

If the bill is not drawn in accordance with the provisions of the promise to accept, the latter can not be held an acceptance of the draft. *Lindley* v. *First Natl. Bank of Waterloo*, 76 Iowa, 429, (14 Am. St. Rep. 254).

The evidence discloses that the claimant was the mother of the principal defendant, and that the whole proceedings were for the purpose of defrauding the creditors from obtaining any property of the defendant. All the circumstances of the case go to show this: The fact that the draft was never presented for either acceptance or payment, and that no notice was sent that this draft was even drawn till nearly a month after the trustee suit was brought, and then, merely notice was given to the attorney of the trustee that the draft was in the hands of the claimant.

*P. H. Gillin*, for trustee.

*A. J. Merrill*, for claimant.

SITTING: EMERY, WHITEHOUSE, SAVAGE, FOGLER, POWERS, JJ.

EMERY, J. At the return term of this trustee process October, 1897, Mr. Morse, the trustee, made his disclosure in due form under oath in which he stated that, at the date of the service of the process upon him, he had in his hands $1373 75-100 due Richman the principal defendant for horses sold by Richman to him. He

did not then disclose that any other person claimed the fund. The case thereafter lay dormant until the January term, 1900, when it was brought up, and according to the bill of exceptions, "At a hearing on the question, as to whether or not the alleged trustee should be charged, the presiding justice adjudged the trustee chargeable for the funds in his hands." The only issue regularly formed in the case was between the plaintiff and the trustee, and upon that issue between them the ruling was, of course, right and the trustee did not except.

One Emeline W. Richman, however, did file a bill of exceptions as claimant of the funds disclosed, and this bill of exceptions the presiding justice allowed. So far as the record before us shows, Mrs. Richman is not in a position to have exceptions allowed or considered. Her appearance as claimant was entered upon the docket by counsel at sometime, but it does not appear when. She did not file any petition to be "admitted as a party to the suit so far as respects her title to the goods, effects or credits in question." She did not file any pleadings or allegations of fact, nor take any steps to form an issue between her and the plaintiff upon which the court, with or without a jury, could render a judgment which should bind and protect them and the trustee. Her exceptions, therefore, should in strictness be dismissed without further consideration. R. S., c. 86, § 32; *Bunker* v. *Gilmore*, 40 Maine, 88; *Hardy* v. *Colby*, 42 Maine, 381; *Dalton* v. *Dalton*, 48 Maine, 42; *Thompson* v. *Reed*, 77 Maine 425.

All the three parties, however, have signed and filed a written stipulation submitting to the court the question between the plaintiff and the claimant as to which of them is entitled to the fund, disclosed by the trustee as in his hands, and agreeing to be bound by its judgment thereon. We venture, therefore, to consider what the evidence proves upon that question.

The undisputed evidence shows these facts;—Mr. Morse (the trustee) a horse dealer at Bangor had often bought horses from Mr. Chas. F. Richman (the principal defendant) a horsedealer at East Buffalo, N. Y. May 6, 1897, Richman wrote Morse proposing to sell him a car load of horses on thirty days time. May 9 following,

Morse telegraphed Richman as follows: "Ship sixteen or eighteen if you can ship them worth the money, good big stock, one pair extra drivers, make thirty days draft, answer." May 10th, Richman shipped a car load of twenty horses to Morse at Bangor, and the same day drew his draft on him against the horses so shipped on thirty days for $1746—payable to his, Richman's, own order. This draft he indorsed and delivered to Jones Bros. in part payment of his note held by them. Mrs. Emeline W. Richman, the claimant, was Richman's surety on this note, and paid it, and Jones Bros. thereupon indorsed and transferred the draft to her.

The horses arrived at Bangor on the evening of May 13, and were the same evening unloaded from the car by Morse and placed in his barn. The next morning, May 14, this trustee process was served upon Morse, whereupon he telegraphed Richman, the consignor, as follows: "Have been trusteed to-day action against you. Court makes me hold funds. Can't honor draft, see letter." A few days later he sold the horses. Before the return term of the trustee process he was notified that Mrs. Richman held the draft and upon it claimed the proceeds of the horses. As already stated, however, he made no mention of this in his disclosure, but Mrs. Richman has voluntarily appeared and submitted her claim to the judgment of the court.

Upon the foregoing facts there can be no question that Mrs. Richman is entitled to the fund, that fund, being the proceeds of the horses, against which the draft held by her was drawn by the consignor at the time of the shipment, and in pursuance of the consignee's direction at the time of the purchase. The draft drawn and negotiated under such circumstances was, at least, as an equitable assignment of the fund, which would be operative against a subsequent attachment by trustee process. *Robbins* v. *Bacon*, 3 Maine, 346; *Littlefield* v. *Smith*, 17 Maine, 327; *Simpson* v. *Bibber*, 59 Maine, 196; *Exchange Bank* v. *McLoon*, 73 Maine, 498; *Jenness* v. *Wharff*, 87 Maine, 307.

But at the hearing in January, 1900, more than three years after filing his disclosure as above stated, Mr. Morse testified as a witness that, at the time he unloaded the horses from the car and

put them in his barn after their arrival, he was very much dissatisfied with them, and did not accept them;—that after sending the telegram above quoted he wrote the consignor Richman, that the horses were not what he expected.

The plaintiff claims that this testimony proves that the horses were not accepted,—that, therefore, Mr. Morse at the time of the service of the trustee process did not owe the consignor, or his assignee, anything for the horses, but the horses were still the property of the consignor, "entrusted to and deposited in his [Morse's] possession,"—and that the draft did not operate to pass any title to the horses. Assuming for the moment that the horses were not accepted and remained the property of the consignor, it may be questioned whether they were "entrusted to and deposited in his [Morse's] possession," in the statutory sense of those words so as to be attachable by trustee process. The mere fact that the goods of one are in the possession of another and left there by the owner does not make them attachable by trustee process. The statutory words imply some fiduciary or at least contractual relation between the owner and depositary as to the custody of the goods. *Howard* v. *Card*, 6 Maine, 353 ; *Skowhegan Bank* v. *Farrar*, 46 Maine, 293. In *Grant* v. *Shaw*, 16 Mass. 342, it was declared that the consignee of goods could not be held as trustee of the consignor until he had accepted the goods. In *Staniels* v. *Raymond*, 4 Cushing, 314, the owner left a cow with the alleged trustee upon trial to be purchased by the trustee if satisfactory. Before the expiration of the time allowed for the trial, the trustee declined to purchase and re-delivered the cow, but the owner nevertheless left the cow in the possession of the trustee. It was held that the trustee was not chargeable. The decision was put on the ground that to make a depositary of goods chargeable as trustee, he must be under some contractual obligation to the owner to return or pay for the goods in his possession.

It would seem, therefore, that if the plaintiff is correct in his assumption that the horses were not accepted, the consignee Morse could not be charged at all as trustee, and that exceptions by the trustee would have to be sustained.

We have no occasion, however, to decide that question. These exceptions are by the claimant alone. We are satisfied, also, that Morse did in effect accept the horses, and was chargeable as trustee for their price or value. He took the horses from the possession of the carrier into his own possession. He did not notify the carrier or consignor of any non-acceptance. He merely wrote the consignor that the horses were not what he expected. A few days afterward, without consulting the consignor, he sold the horses. This he could not have rightfully done unless he had accepted them. His telegram on the day of the service of the trustee process, and his sworn disclosure within six months thereafter, show his then understanding that he had accepted them. These acts and statements, at or near the time, far outweigh his testimony given over three years afterward.

It is urged in argument that the draft was made in fraud of creditors. We find no evidence of fraud. The indorsees were all creditors of the drawer, and it was lawful for him to pay them rather than the plaintiff so far as this process is concerned.

From the above findings of law and fact it follows that the fund in the hands of the trustee belongs to Mrs. Richman, the claimant. This conclusion requires the exceptions to be sustained, and the trustee to be discharged from this suit. *Porter* v. *Bullard*, 26 Maine, 448.

According to the stipulation filed, it is also to be adjudicated that the fund in the hands of the trustee, Morse, belongs to the claimant, Mrs. Richman. Although the case came to the law court technically upon exceptions, yet upon exceptions in a trustee process the law court has full power, not only to sustain or overrule the exceptions, but also to re-examine and determine the whole case, to remand it for further proceedings, or to make such final disposition of it as justice requires. R. S., c. 86, § 79.

*Exceptions sustained.*
*Trustee discharged from this suit.*
*Fund adjudged to the claimant.*