WHAT CHEER SAVINGS BANK, Appellant, v. G. M. MOWERY, Appellee, and CENTRAL SAVINGS BANK, Intervenor, Appellee.

Garnishment: RIGHTS OF CREDITORS. Generally speaking a garnishing
1 creditor's right to property is dependent upon the debtor's right to receive it from the garnishee.

Same: SHIPMENT OF LIVE STOCK: TRANSFER OF BILL OF LADING: RIGHTS
2 OF ASSIGNEE. Where a bank simply promises to furnish the money or cash the checks of a stock dealer for stock purchased by him, or the dealer merely promises to pay such advancements out of the proceeds of the stock purchased, the bank acquires no lien upon or property rights in the stock; but if the money was furnished on an agreement that the proceeds of the stock was

to be set aside and applied to its repayment, or was to be treated as security, or if the legal effect of the manner of shipment and delivery of a bill of lading with a draft on the consignee attached thereto was to vest in the bank the right to receive the proceeds, then the bank can hold the proceeds for the payment of its advancements as against a subsequent garnishing creditor of the shipper.

Same: TITLE: GARNISHMENT OF CONSIGNEE. The mere delivery of live stock to a carrier for shipment and the receipt by him of a bill of lading are not sufficient to transfer to the consignees the title .to the property, or to make the consignees debtors of the shipper, in the absence of any showing that they are under legal or contract obligation to accept and pay for the stock. But where a shipper turned over to a bank, as in this case, the bill of lading with a draft on the consignees attached to secure the bank for money advanced with which to purchase the stock, a subsequent garnishment of the consignees by a creditor of the shipper did not create a right to the proceeds of the shipment as against the holder of the bill of lading and draft.

Same. The consignees' title to property is not complete so as to render him subject to garnishment as the debtor of the shipper until the bill of lading has been received by him, or he has in some manner accepted the shipment or obligated himself to pay therefor.

Same: PLEADINGS: EVIDENCE. The petition of intervention of the bank in this case alleged that the shipper had been buying stock for shipment, that under an oral agreement the bank had furnished the money for such purchases, that the proceeds of the sales were deposited to its credit or paid to it by draft, and that at the time the consignee in this case was garnished by a creditor of the shipper that method was being pursued. *Held,* that the pleading in the absence of a motion or demurrer was sufficient, and that the evidence sustained intervener's claim to the proceeds of the shipment in question

Same: ORDER FOR PAYMENT OF PROCEEDS TO INTERVENERS. The shipper's order to deposit the proceeds of shipments of stock to the credit of the intervening bank, which furnished the money for making the·purchases is held to apply to the particular shipment in question, although made some time previously.
Deemer, C. J., dissenting.

*Appeal from Keokuk District Court.*—HON. W. G. CLEMENTS, Judge.

WEDNESDAY, OCTOBER 26, 1910.

ACTION at law.   The material facts will be found
stated in the opinion.—*Affirmed.*

*Stockman & Baker,* for appellant.

*C. M. Brown* and *J. C. Beem,* for appellees.

WEAVER, J.—At the time of the transactions in ques-
tion, the defendant, Mowery, was, and for several years
had been, engaged in the business of buying and shipping
live stock at the town of What Cheer.   For a considerable
period he had been making frequent shipments of hogs
to the packing house of T. M. Sinclair & Co. at Cedar
Rapids, Iowa.   To procure money with which to make
his purchases, Mowery sought accommodation at the local
banks, usually arranging for repayment of these advances
from the proceeds of the shipments.   In pursuance of that
policy, Mowery, prior to the shipment hereinafter referred
to, arranged with the intervener bank to pay his checks
given for the purchase of hogs, and gave to the said bank
a written order directed to T. M. Sinclair & Co. to deposit
the balances arising in his favor to the intervener's credit
with its correspondent, the Citizens' National Bank at
Cedar Rapids.   Thereafter on April 21, 1908, Mowery
bought and shipped a car load of hogs to Sinclair & Co.
On receipt of the hogs the railway company made and
delivered its usual bill of lading, or shipping receipt and
contract, to Mowery, who immediately turned it over to
the intervener bank, together with his draft upon T. M.
Sinclair & Co. in favor of intervener for $900, which
appears to have been the estimate of the parties of the
proceeds of the shipment.   This draft and bill the inter-
vener at once forwarded to its correspondent, the Citizens'
Bank at Cedar Rapids, Iowa, for collection.   The train

carrying the hogs was due to arrive in Cedar Rapids about 3 o'clock in the afternoon of the same day, but the car of hogs did not come into the possession of the consignee until the following day, April 22, 1908. On the evening of April 21st, after the car had arrived at Cedar Rapids, but before it had been delivered by the carrier, the plaintiff, What Cheer Savings Bank, claiming to have secured a judgment against Mowery, caused notice of garnishment under execution to be served upon T. M. Sinclair & Co. and sought to subject the proceeds of said shipment to the payment of its claim. The garnishment proceeding was contested by the intervener, which asserted a prior right to the fund  On trial the district court found for the intervener, and plaintiff appeals.

In support of its appeal counsel for appellant argue that the delivery of the hogs to the carrier was in law a delivery and transfer of title to the consignee, and that the debt for the selling price at once became garnishable in appellant's favor. It is further contended that the intervener's claim asserted in this court has no support either in pleading or proof.

I. Preliminary to a discussion of the points thus made, it is well to consider just what rights a garnishing creditor acquires in or to the funds found in the hands of a garnishee. It has often been held that, generally speaking, the right of the creditor in such cases is measured by the right of the debtor, and, if as between themselves the debtor has no right to demand and receive the fund from the garnishee, then the creditor can not acquire such right by the garnishment. *Streeter v. Gleason,* 120 Iowa, 703; *Packer v. Crary,* 121 Iowa, 388; *Kuhnes v. Cahill,* 128 Iowa, 594; *Howe v. Jones,* 57 Iowa, 130. If, then, as between the intervener and Mowery, the former, by virtue of the order directing the deposit of the fund to its credit or by virtue of the delivery to it of the bill of lading with draft

1. GARNISHMENT: rights of creditors.

attached, acquired a right to said fund superior to that of Mowery, then such right is in no manner avoided or defeated by the garnishment of the consignee.

II. The mere fact that the intervener furnished the money or paid the checks given for the purchase of the hogs, or that Mowery promised to make payment from the proceeds of the venture, is of course, in-sufficient to vest it with any rights in said property or to create a lien thereon in its favor. If, however, the money was furnished under any agreement or understanding by which the proceeds of the sale of the property so purchased were set aside or appropriated to the payment or security of the debt, or if the legal effect of the manner of shipment, and the delivery to the intervener of the bill of lading with draft attached, was to vest it as against Mowery with the right to demand and receive the proceeds of the sale, then the trial court was right in denying a recovery to the plaintiff. Whether the title to the hogs had vested in Sinclair & Co. at the time of the garnishment as argued by appellant is therefore immaterial, except as one of the facts bearing upon the ultimate inquiry whether Mowery or intervener was entitled to demand payment of the selling price. If A. procures money from B. to purchase property for resale to C. and agrees that C. shall pay the price thereof direct to B. and not to A., and this arrangement is made known to C, he is bound to account to B. for the agreed price, even though B. never had any title to or lien upon the property. In such case garnishment of C. at the instance of a third person claiming to be a creditor of A. will be ineffectual. The case at bar is essentially parallel to the supposed case above stated. If we accept the correctness of appellant's claim that the delivery of the shipment to the carrier was a delivery to Sinclair & Co., to whom it was consigned, then Sinclair & Co. became at the same instant bound to pay the price thereof, not to Mowery,

*2. SAME: shipment of live stock: transfer of bill of lading: rights of assignee.*

but to the intervener bank in accordance with the written direction already given them.

III.    But the intervener's right has other sufficient foundation.    Conceding, for the purpose of this phase of the argument, that appellant is correct in its contention that the delivery of the hogs to the carrier was in legal effect a delivery to Sinclair & Co., then, as we have already pointed out, said consignees became at once indebted to Mowery or to the intervener for the price.    It is the theory of the appellant that the debt was due to Mowery, and as such was subject to garnishment upon the judgment against him. Assuming this also to be true, we have still to inquire whether the appellant's garnishment was made before any material change had been effected in the status of the fund sought to be reached in said proceeding.    The record shows without controversy that garnishment was not ·served on Sinclair & Co. until the evening of the day of shipment, and that several hours before such service Mowery had turned the bills of lading with draft attached over to the intervener bank, which advanced the money for. the purchase of the hogs.    If this was done for the purpose of transferring to the intervener the title to the hogs or to the proceeds of the shipment, or to secure said intervener for its advancements to Mowery, or in the nature of an order upon Sinclair & Co. for this particular fund, which, when received, was to be credited upon Mowery's debt, then upon the delivery of such instrument the intervener obtained a right, legal or equitable, to receive the payment, and it was no longer garnishable upon the demand of a third person.    *In re Hanna* (D. C.) 105 Fed. 587; *Dolese v. McDougall,* 182 Ill. 486 (55 N. E. 547); *Slobodisky v. Curtis,* 58 Neb. 211 (78 N. W. 522); *Gillette v. Murphy,* 7 Okl. 91 (54 Pac. 413); *Building Association v. Coleman,* 94 Va. 433 (26 S. E. 843); *Zilke v. Woodley,* 36 Wash. 84 (78 Pac. 299, 90 Am. St. Rep.

3. SAME: title: garnishment of consignee.

346); *Harlow v. Bartlett,* 96 Me. 294 (52 Atl. 638); *Bank v. Barnes,* 18 Mont. 335 (45 Pac. 218, 47 L. R. A. 737, 56 Am. St. Rep. 586); *Walcott v. Richman,* 94 Me. 364 (47 Atl. 901); *Marsh v. Garney,* 69 N. H. 236 (45 Atl. 745); *Pollard v. Pollard,* 68 N. H. 356 (39 Atl. 329); *Brill v. Tuttle,* 81 N. Y. 454 (37 Am. Rep. 515); *McDaniel v. Maxwell,* 21 Or. 202 (27 Pac. 952, 28 Am. St. Rep. 740); *Warren v. Bank,* 149 Ill. 9 (38 N. E. 122, 25 L. R. A. 746); *Moore v. Lowrey,* 25 Iowa, 336; *McWilliams v. Webb,* 32 Iowa, 557; *Foster v. Dayton,* 10 Daly (N. Y.) 228; *The Elmbank* (D. C.) 72 Fed. 610; *Ruthven Brothers v. Clarke,* 109 Iowa, 25; *Shannon v. Mayor,* 37 N. J. Eq. 125; *Kirtland v. Moore,* 40 N. J. Eq. 109 (2 Atl. 269); *Burn v. Carvalhol,* My. & Cr. 690; *Fletcher v. Morey,* 2 Story, 555, Fed Cas. No. 4,864; *Houston v. Jordan,* 82 Tex. 352 (18 S. W. 702); Porter's Bills of Lading, section 494; *Bank v. Dearborn,* 115 Mass. 219 (15 Am. Rep. 92). But the delivery of the hogs to the carrier and the receipt by the shipper of a bill of lading naming Sinclair & Co. as consignees were not of themselves sufficient to transfer to the consignees the title to the property, nor did such transaction operate to make Sinclair & Co. the debtors of the shipper. So far as it appears from the record, the consignees were under no legal or contract obligation to accept the hogs or to pay for them. The bill of lading had never been delivered or tendered to them. Had the hogs died en route the loss would have fallen on the shipper, or upon the person holding the bill of lading, and not upon the consignees. The retention of the bill of lading and its delivery to the bank to be delivered to Sinclair & Co upon payment of the price is sufficient evidence of the purpose of the shipper to retain title until payment was made. *Bank v. Dearborn,* 115 Mass. 219 (15 Am. Rep. 92); *Ela v. Express Co.,* 29 Wis. 611 (9 Am. Rep. 619); *Mitchell v. Ede,* 11 Ad. & El. 888; *Bank v. Milling Co.,* 103 Iowa, 518; *Cragun*

*v. Todd,.* 131 Iowa, 250; *Bank v. Wright,* 48 N. Y. 1; *Bank v. Kelly,* 57 N. Y. 35; *Hylton v. Symes,* 7 Phila. (Pa.) 96; *Greenwood v. Canadian,* 72 S. C. 450 (52 S. E. 191, 2 L. R. A. (N. S.) 79, 110 Am. St. Rep. 627).

The point is made by appellee that the consignee's title is not complete until the bill of lading has been delivered to him by the carrier or shipper, or until he has in some manner accepted the consignment. *Bruce v. Andrews,* 36 Mo. 593; *Peck v. Ritchey,* 66 Mo. 114; *Ezell v. English,* 6 Port. 311; *Hausman v. Nye,* 62 Ind. 485 (30 Am. Rep. 199); *Woodruff v. Nashville,* 2 Head (Tenn.) 87; *Saunders v. Bartlett,* 12 Heisk. (Tenn.) 316.

4. Same.

In *Greenwood v. Canadian, supra,* the court says: "As between vendor and purchaser the authorities leave no room for doubt that, even if the bill of lading provides for delivery to the consignee, yet if the consignor draws for the price attaching the bill of lading to the draft this is sufficient evidence of his intention to reserve the title and right of possession until the draft is paid." Discussing the same subject in note to *Chandler v. Sprague,* 38 Am. Dec. 419, Mr. Freeman says: "Where the bill of lading whether drawn so as to make the goods deliverable to a designated consignee or to the shipper's order, is attached to or accompanies a draft for the price which is forwarded for collection, it is clear that the shipper reserves a *jus disponendi* which prevents a passing of the title until the draft is paid." This principle has support in authorities too numerous to justify any attempt at further citation. There is nothing whatever in the case at bar to take it out from under the operation of this rule. It follows that at the time the garnishment was made there was no debt due or to become due from Sinclair & Co. to the defendant, and before any such relation arose between said parties, and before the garnishment was made, the bill of lading with draft drawn against the shipment had been delivered

to the intervener. It is not necessary for us to determine whether the delivery of the draft and bill of lading to the intervener served to vest it with absolute title to the hogs, or whether it was merely intended to secure payment of the bank's claim for its advancement of the purchase price of the shipment. If it was either, the garnishment of the consignee could not avail to deprive the bank of its priority. In either event, as between itself and Mowery its right to demand and receive the payment was beyond question, and the garnishing creditor occupies no stronger position than Mowery himself. That the draft and bill of lading were so delivered to secure to the bank reimbursement there is little or no room to doubt when we read the record.

IV. Appellant questions the sufficiency of the petition and of the evidence in support of the intervener's claim. It is true the petition of intervention as amended is quite 5. Same: plead- general and obscure in its statements; but ings: evidence. its sufficiency was not assailed by motion or demurrer, and, in the light of admitted or undisputed facts, their meaning and effect are not difficult of apprehension. In the pleadings it is alleged, in substance, that Mowery was buying and shipping hogs, and that under an oral agreement between him and the bank, by which the latter furnished the money for such purchases, the proceeds of the sales were to be deposited to the credit of the intervener or paid to it by draft, and that this method of business was being pursued or carried out at the time of garnishment, and upon this showing intervener claims to be entitled to receive the money due from the consignee. The evidence tends to show that Mowery was a man of limited means, and there is nothing to indicate that he furnished, or was able to furnish, any security for the advances made to him except such as might be derived from the very common device of drawing drafts against his shipments and delivering them to the bank with ac-

companying bills of lading for collection and credit to his account. On cross-examination of the intervener's cashier, counsel drew from him the statement that the drafts were not received in payment of Mowery's account, but were credited against his overdraft when the returns came in from the collections, and upon this admission we are asked to hold that until such collection was accomplished the debt due from the consignee was garnishable at the suit of other creditors. It is hardly necessary to repeat that the right of the intervener does not depend upon its having taken the draft and bill of lading in payment of the drawer's debt, and that if it took them as security or under an agreement, express or implied, that it should collect the money due or to become due from the consigne and apply it to the discharge of its claim against the consignor, no garnishment of the consignee would avail to defeat the right thus created. *Shaffer v. Rhynders,* 116 Iowa, 474. Such claim has sufficient support in the evidence.

V. It is also contended that the order by Mowery to Sinclair & Co. to deposit the proceeds of sale to the intervener's credit was given some time prior to the trans-

6. SAME: order for payment of proceeds to intervener.

action here in question and can not be held applicable to the proceeds of this particular sale. Even if this argument be sound, it could not affect the result of this case. We think, however, it is apparent that the order was intended to apply to all the shipments made by Mowery. *Brill v. Tuttle,* 81 N. Y. 454 (37 Am. Rep. 515); *Des Moines v. Hinkley,* 62 Iowa, 637.

It should also be said that the issues herein were tried as an action at law, and, a jury being waived, the court found for the intervener. Such being the case, we are bound to give the evidence the most favorable interpretation of which it is reasonably capable in support of the findings below.

Thus viewed, we discover no prejudicial error in the

record, and the judgment of the district court is therefore *affirmed.*

DEEMER, C. J. (dissenting).—In my opinion the majority have made and decided a case not presented to the court below, nor argued here. Moreover, the case so made is not sustained by sufficient testimony, and as I view it, the decision of the lower court upon the issues and testimony adduced should be reversed. The case is simply this:

Mowery purchased. hogs, issuing checks therefor upon the Central Savings Bank. These checks were paid by the bank. He shipped a car load of hogs to T. M. Sinclair & Co. at Cedar Rapids, Iowa, taking a live stock contract showing shipment to the Sinclair Company. He drew a draft on the Sinclair Company to the intervener, Central Bank, for the sum of $900. This draft was never accepted by the Sinclair Company, but was protested on April 22, 1908. Mowery was indebted to the What Cheer Savings Bank. This bank sued out an execution on a judgment held by it against Mowery and caused the same to be served by garnishing the Sinclair Company on the 21st day of April, 1908. The service of garnishment was after the car of hogs had arrived at Cedar Rapids, but before they came into the actual possession of the consignee. The garnishment was run before the presentation of the draft with the live stock contract to the Sinclair Company. The garnishee paid the purchase price of the hogs into court, and the Central Bank intervened in the suit, and in its pleading framed the one issue which I think can be considered on this appeal. The controversy is then between two creditors of Mowery to the funds now in the hands of the court, and I think it goes without saying that the question is not, primarily, what right either creditor may have against the common debtor, but, what are the rights of these creditors between themselves? By garnish-

ment a creditor acquires a lien or a right in the nature of a lien upon any property or money in the hands of the garnishee which he is entitled to establish and enforce, not only against the judgment defendant, but against all other creditors who do not have a prior right to or lien upon the fund. Intervener came into this case asserting a prior right to or lien upon this fund, and the burden was upon him to show such right to or lien upon the money in the hands of the court. His claim he must present in the form of a petition, and upon the allegations thereof he must stand or fall. I therefore quote from the petition of intervention as amended the exact claim made by the Central Savings Bank. It is as follows:

That by virtue of a verbal agreement and arrangement with the defendant, G. M. Mowery, and the garnishee, T. M. Sinclair & Co., a corporation under the laws of the state of Iowa, with its principal place of business at Cedar Rapids, Linn County, Iowa, whereby this intervener, the Central Savings Bank of What Cheer, Iowa, furnished the money to pay for the carload of hogs shipped from What Cheer, Iowa, to the said garnishee, T. M. Sinclair & Co., at Cedar Rapids, Iowa, about the 20th day of April, 1908. That about the 21st day of April, 1908, as appears from the execution and return, the proceeds of the said carload of hogs was garnished in the hands of the garnishee, T. M. Sinclair & Co., upon a pretended judgment in favor of the plaintiff, the What Cheer Savings Bank. . . . The intervener further states that the proceeds of the first carload of hogs amounted to more than the sum of $900; that the entire proceeds of the said two carloads is the property of this intervener; and that the said defendant, G. M. Mowery, has no claim or interest therein. The intervener further states that, by reason of the issuance and levy of the pretended execution and the withholding of the proceeds of the said two carloads of hogs from this intervener, it has been damaged in the sum of $100, no part of which has been paid. . . . Wherefore the said intervener prays for judgment against the said plaintiff and the garnishee holding and declaring that

it is the owner and entitled to the possession of the proceeds of the sales of the said two carloads of hogs, and that it have judgment against the plaintiff and against the said garnishee for the amounts thereof, together with interest and costs of suit and its damages in the sum of $100. . . . That about the month of August, 1906, the defendant, G. M. Mowery, and this intervener entered into a verbal agreement, whereby this intervener was to furnish the money whereby the said defendant, Mowery, purchased hogs for shipment to the garnishee, T. M. Sinclair & Co., by the payment of the checks of the said defendant, Mowery, drawn upon the intervener; that the proceeds of the sales of said hogs shipped to the said garnishee were deposited to the credit of the intervener, or paid to it by draft; that such arrangement between the intervener and said garnishee continued and was being carried out by the parties thereto at the time of the garnishment in this cause. Intervener further says that the money garnished herein belongs to this intervener; that it had furnished the money to pay for the said carload of hogs, the proceeds of which was garnished by the plaintiff; and that the defendant, Mowery, had no interest in or claim to any part of the same.

This is the exact claim made by the intervener, and it will be noticed that there is not the slightest reference made to any bill of lading, nor to any draft drawn by Mowery upon the Sinclair Company. Intervener's claim is by virtue of a verbal agreement between Mowery and the Sinclair Company, whereby the Central Bank furnished the money to pay for the carload of hogs shipped from What-Cheer to the Sinclair Company. This, if established, would not give the intervener any claim to the proceeds arising from the hogs shipped by Mowery to the Sinclair Company. The only other claim made is that Mowery entered into a verbal agreement with the Central Bank whereby, he (Mowery) purchased hogs for shipment to the Sinclair Company by the payment of Mowery's checks; that the proceeds of the sales of said hogs were deposited to the credit of the intervener or paid to it by draft. In-

tervener alleged as a conclusion that, as it had furnished the money to pay for the carload of hogs, it was entitled to the proceeds of the hogs, and therefore to the money deposited with the clerk of the courts. Now, what is the law upon such propositions? Surely no lien was created upon the money in the hands of the court through such arrangements. The evidence shows that the so-called bill of lading referred to by the majority is a live stock contract issued by the railway company, which recited the receipt of one car of hogs from J. M. Mowery, to be delivered to T. M. Sinclair & Co., of Cedar Rapids. *Prima facie* the delivery of the hogs under this contract to the carrier was a delivery to the consignee, Sinclair & Co., and passed the title to said company. See *Bank v. Crabtree,* 86 Iowa, 731; *Whitlock v. Workman Co.,* 15 Iowa, 351; *Scharff v. Meyer,* 133 Mo. 428 (34 S. W. 858, 54 Am. St. Rep. 672); *Wigton v. Bowley,* 130 Mass. 252.

There is nothing in the oral testimony tending to show that Mowery had any intent to retain title. The live stock contract, it is true, was delivered to the Central Bank at the time Mowery drew his draft in favor of that bank on the Sinclair Company; but this was simply a method whereby he was attempting to give the intervener an assignment of part of the funds or money to the bank. There is no claim either in the petition of intervention or in the testimony that it was Mowery's intention to hold control of the property, which ordinarily would pass, under such circumstances as are here disclosed, to the consignee, Sinclair & Co., upon delivery to the carrier. It is enough to say, in this connection, that intervener makes no claim whatever to the goods in virtue of the delivery or assignment to it of the live stock contract or bill of lading. It has no claim to the funds arising from the sale of the hogs in virtue of its having furnished the purchase price for the hogs to Mowery. *Hodges v. Kimball,* 49 Iowa, 577.

The draft drawn by Mowery did not work an assignment of the funds in the hands of the Sinclair Company for the reason that under our negotiable instruments act it did not constitute an assignment of the funds or any part thereof until presented and accepted by the party upon whom it was drawn. See Code Supp. 1907, section 3060a127.

Moreover, even if intervener had made claim to a lien upon the hogs or the proceeds thereof in virtue of the bill of lading, it would fail for the reason that, according to the testimony as I understand it, the bank took the draft for collection only as the agent for Mowery and held the bill of lading for the same purpose. In that relation it was acting simply as Mowery's agent and never acquired in its own right any interest in or claim upon either the hogs or the proceeds thereof. Intervener was attempting to bring his case under the rule announced in *Shaffer v. Rhynders,* 116 Iowa, 472. In this it failed, however, for it did not prove an agreement or contract that it was to have a lien upon all shipments of hogs. No such agreement is shown in this case, nor is any such claim made in the petition of intervention. The most that can be claimed is that intervener furnished the money to purchase the hogs, and that the proceeds of the sale of the hogs shipped to Sinclair & Co. were deposited to the credit of the intervener, or were paid to it by draft. This agreement, to my mind, even if established, did not create any lien either upon the hogs or the proceeds thereof. I think the case is ruled by *Scharff v. Meyer, supra; Bank v. Milling Co.,* 103 Iowa, 518; *Bank v. Crabtree, supra; Kentucky Refining Co. v. Globe Refining Co.,* 104 Ky. 559 (47 S. W. 602, 42 L. R. A. 353, 84 Am. St. Rep. 468); *Willman Mercantile Co. v. Fussy,* 15 Mont. 511 (39 Pac. 738, 48 Am. St. Rep. 698).

I may add, in conclusion, that there never was any assignment of the bill of lading to the intervener, and that

the most that can be claimed from the testimony is that the intervener bank took the draft with the bill of lading for collection. Its managing officer distinctly stated that it did not accept it as payment, did not discount it, but did take it for collection. I conclude by saying again that the majority have decided a case not made by either the petition of intervention or the testimony offered in support thereof.

I think that on the issues tendered the judgment should have been for the plaintiff, and that the finding of the trial court in favor of the intervener was erroneous and should be *reversed*.