THE COUNTY OF DES MOINES v. HINKLEY & NORRIS ET AL.

D. SIGLER v. THE COUNTY OF DES MOINES.

1. **Evidence:** BANK CHECKS: PAROL TO EXPLAIN WORDS OF LIMITATION. Where checks were drawn "to be paid as soon as we settle with the county," it was competent, for the interpretation of these words, to show by parol that it was understood by the drawers, drawee and payees that the checks were to be paid out of a particular fund due the drawers from the county, and which the drawers had previously assigned to the drawee of the checks as security for advances.

2. **Equitable Assignment:** OF PARTICULAR FUND: FACTS CONSTITUTING. No particular form of words is necessary to create an equitable assignment of a fund. Anything which evinces an intent to do so is sufficient. And where parties, by an order absolute in its terms, assigned to a bank, as security for advances, the money due and to become due them from the county upon a contract, and afterwards drew checks upon the bank to various parties "to be paid as soon as we settle with the county," which checks the bank accepted, to be paid in the order of presentation, out of and to the extent of the fund, *held* that these facts constituted an equitable assignment, irrevocable—to the bank, of so much of the fund as was necessary to reimburse it for advances made, and to the payees of the checks, in their order, of so much of the fund as was necessary to pay them, so long as the fund should hold out.

3. ————: OF PART OF A PARTICULAR FUND: HOW AFFECTED BY WILL OF CUSTODIAN. While the custodian of a particular fund may not be bound to accept an order drawn on him for a part of the fund, yet such an order will be upheld as constituting an assignment in equity, especially where, as in this case, the custodian consents thereto.

4. **Garnishment:** COUNTY EXEMPT FROM: WAIVER OF EXEMPTION. A county is exempt from garnishment process; (Code, § 2976;) and it is doubtful whether it waives such exemption by bringing an action in relation to the garnished fund, and making the garnishors parties thereto.

5. ————: OF FUND IN CUSTODY BUT NOT IN POSSESSION. One who has the equitable right to the custody of a fund, but not the actual possession thereof, may be garnisheed in relation thereto for the debt of those who are the equitable owners of the fund; and such garnishment will create a lien upon the fund, senior to that created by checks subsequently drawn thereon by the equitable owners.

6. **Contract:** FOR ERECTION OF COURT HOUSE: DISTRIBUTION OF FINAL PAYMENT AMONG CLAIMANTS. Where the contractors for the erection of a court house made to one K. an order upon the county for a certain amount, to be paid "out of any money that may be due us on final set-

tlement," but it appeared from the evidence that it was the intention that K. should be paid only out of the *profits* of the job, *held* that his order was entitled to payment only after satisfaction of material men, who held subsequent orders drawn by the contractors on the same fund, notwithstanding, because the building was a public one, they could not establish mechanics' liens thereon. And *held*, further, under the circumstances of this case, that K's order was payable only out of the profits of the work as contemplated when the order was given, and that he was not entitled to be paid thereon an amount due the contractors for extra work on the same building, subsequently contracted for; and the county, having paid the price of such extra work to the contractors, was not bound to pay it again upon K's order.

*Appeal from Des Moines Circuit Court.*

SATURDAY, DECEMBER 15.

IN April, 1879, Hinkley and Norris contracted with Des Moines county to erect a court house for the sum of $86, 200.00. In October, 1879, they gave to the National State Bank an order on the county for all money due them on the contract. The county had knowledge of this order, and the same was filed in the office of the county auditor. Under it the bank drew all the money due under the contract, except the final estimate.

The court house was nearly completed in December, 1881, and early in that month it was ascertained that Hinkley & Norris were indebted to divers persons for material used in the construction of the court house, which they could not pay out of the money due on the contract, and their creditors made efforts to obtain liens on such fund. Checks were drawn by Hinkley & Norris, in favor of certain creditors, on the bank. Other creditors commenced legal proceedings, and garnished the county, and still others procured orders from Hinkley & Norris on the county, and afterward obtained from them an assignment of the amount due therefrom. D. S. Sigler, as assignee of one King, claimed a part of said fund.

The county commenced this action, and admitted that it was indebted to Hinkley & Norris, and stated its readiness to pay the amount due. The several creditors of Hinkley & Norris

claiming any part of the fund were made parties, and they severally filed pleadings in which their respective rights were set forth.

Sigler commenced an action at law against the county, and he was afterward made a party by the county to the action in equity, and he appeared therein and claimed that he was entitled to a part of said fund.

The bank was made a party, and it claimed a lien on the said fund. The several actions were tried together. The further material facts appear in the opinion. The court decreed that Sigler was not entitled to any part of the fund, and he appeals.

It was further decreed that the holders of certain checks on the bank were entitled to priority, and other claimants of the fund appealed from this portion of the decree.

*Newman & Blake*, for Sigler.

*Poor & Baldwin*, for appealing creditors.

*P. Henry Smythe & Son*, for Burnett & Co.

*Hall & Huston*, for appellees.

SEEVERS, J.—I. During the progress of the trial, and on the eighteenth day of January, 1882, an interlocutory decree was entered, in which it is stated that the court "finds that there is due from the county of Des Moines upon the contract with Hinkley & Norris $7,545.00, and no more," and it was ordered that the county pay said sum to the clerk; and, when this was done, that the said "county of Des Moines be dismissed out of court with its costs."

The money above found due was paid to the clerk, and, as there was no exception taken by any of the parties to the interlocutory decree, the county should not be regarded as a party to this appeal, except as to a special fund, and as to it, the controversy is alone between the county and Sigler.

It is further provided by the interlocutory decree that, "all parties hereto consenting," it is ordered "that the clerk at once pay out of said fund to the National State Bank $1,919.35, the amount of its claim."

As the bank is satisfied with the foregoing relief, it is not, therefore, a party to this appeal.

II. .The rights of the respective creditors of Hinkley & Norris, other than Sigler, will be first considered. The order given by Hinkley & Norris to the bank is in these words:

"Burlington, Io., Oct. 22, 1880.

" To the Honorable Chairman of the Board of Supervisors of Des Moines county, Iowa:

"Please pay to the National State Bank of Burlington any and all sums of money which may be due us under our contract with Des Moines county, Iowa, to build court house, issuing orders therefor payable to them for such sums of money, and the receipt of bank shall be of same force and effect as if the same were signed by us.

"HINKLEY & NORRIS."

The primary object of this order was to secure the bank for any money it should from time to time advance to Hinkley & Norris. Under it, however, the bank drew all the money due on the contract, without reference to the fact whether Hinkley & Norris were indebted to it or not, and the money so drawn was placed to the credit of Hinkley & Norris, who from time to time drew their checks on such fund.

On the third day of December, 1881, by an indorsement on the order, the bank stipulated with the county that the amount then due it was $3,500, and that such amount should not be increased.

About this time it became apparent that Hinkley & Norris could not pay their various creditors who had furnished material used in constructing the court house. The bank owed them nothing, and the amount due from the county had not been agreed upon and adjusted. But, upon the supposition

that such adjustment would soon be made, and the amount due paid into the bank, Hinkley & Norris arranged with the bank to give checks on it to pay off sub-contractors "around Burlington"—the checks to be made payable when there was a settlement with the county.    Checks in the following form were accordingly drawn:

"Burlington, Io., January, 1881.
"National State Bank of Burlington: Pay to Murry Iron Works one hundred sixty-five and $\frac{81}{100}$ dollars.
$165 $\frac{81}{100}$                               HINKLEY & NORRIS."

Across the face of the check there was written the following words: "To be paid as soon as we settle with the county." All the checks were like the foregoing, except the date, payee and amount.    They were all left with the bank for collection.

The understanding between the bank and the several holders was that the checks were to be paid if the bank received any money that could be applied to that purpose; and the bank, at the request of the several holders, wrote across said checks the following words:    "Accepted, payable whenever we have funds properly applicable to this check, but subject to all prior acceptances."

The bank demanded the amount due under the contract of the county, which it refused to pay, solely on the ground, as we understand, that it was feared the county could not safely do so because of the King or Sigler claim.

We find from the evidence that the understanding between Hinkley & Norris, the bank, and the payees of the several checks, was that the checks were drawn on and payable out of the funds due from the county on the court house contract.

It was. the expectation and belief of these parties just named, at the time the checks were drawn and left in the bank for collection, that the money due from the county would be paid into the bank, and that, after the payment of the amount due the bank, the residue of the money could and would be applied to the payment of the checks.

The first question to be determined is whether, under the circumstances above stated, an equitable assignment of the fund in question, or so much thereof as was necessary to satisfy their claims, passed to the check holders. It is insisted that no such assignment was created, because, "when an order general in its terms is accepted by the payee and attempted to be enforced, parol evidence is not admissible to prove that it is payable out of a particular fund."

<div style="margin-left:2em">1. EVIDENCE: bank checks; parol to explain words of limitation.</div>

Several authorities are cited in support of this proposition, the purport of which is that a written contract cannot be controlled, contradicted, or added to, by parol. No one disputes that such is the general rule. But the proposition above stated is faulty, in that it is thereby assumed that the checks are drawn on a general fund. The checks, however, were not payable until a "settlement is made with the county." They, therefore, were not negotiable, and the meaning of the foregoing words must be ascertained. They constituted a part of the contract, and a construction must be placed thereon. We must look at the surrounding circumstances, the acts, conduct, and what was said by the the parties, in order to ascertain what meaning they attached to the words above mentioned. Clearly, the contract should be construed as the parties understood it. There is no doubt, we think, that Hinkley & Norris, the payees, and the bank, understood that the checks were to be paid out of the court house fund, and that the checks were drawn thereon. The checks were not made payable absolutely out of that fund, for the reason that the bank was not in possession of the money.

The only possible meaning that can be attached to the words—payable " when settlement is made with the county," when due weight is given the acts and conduct of the parties, is that the checks were to be paid out of the court house fund. This was the only fund there was. There was no expectation that the bank would receive or have any other money which could be applied to the payment of the checks. Besides this,

it was held in *Moore v. Lowrey*, 25 Iowa, 336, in reference to the same question under consideration, that it was not "necessary that the intent and the contract of the parties fully appear in the writing, but they may be otherwise shown."

From this we understand that, in order to arrive at the intent of the parties and the meaning of the contract, parol proof may be resorted to. This we understand to be the universal rule—that, in the interpretation of contracts parol or verbal testimony may be resorted to in order to ascertain the nature and qualities of the subject to which the instrument refers. Greenleaf on Ev., § 286.

We therefore conclude that the checks were drawn on a particular fund.

III. But it is said that "an order requesting the drawee to pay out of funds which the drawee is authorized to collect for the drawer, is not an assignment of, nor does it create any lien upon, such funds." Authorities are cited in favor of this proposition. But we do not think the proposition thus broadly stated is applicable to the facts in the case at bar. The question, of course, is, whether the bank was a mere collecting agent, or whether, as between the county and Hinkley & Norris, it did not have the absolute control of the funds. It is true, the bank did not have the funds in its actual possession, but this was only because the county refused to pay it over because of the King or Sigler complication.

*2. EQUITABLE assignment of particular fund : facts constituting.*

We do not think any of these parties, other than those last named, can avail themselves of this circumstance.

The order given the bank on the county was absolute in terms, and under it all the parties had acted. If the county had paid the money, when demanded, to the bank, all liability on its part would have been at an end, as against all the parties to this action, except King or Sigler. The appealing creditors would have no right to complain. . Under the order, the bank had the absolute right to receive and collect this fund. It had a beneficial interest in so doing to the extent,

at least, of its advances.   We presume it will not be claimed
that the order did not have the effect to create an equitable
assignment of the fund to the extent of the advances made
by the bank.    The bank, under the order, controlled the
whole fund, and had the right to receive it all as security for
the advances made.   But it may be said, and it is undoubt-
edly true, that, as between Hinkley & Norris and the bank, the
former had the power to control the disposition of so much
of the fund as was not required to pay the advances.   This
they undertook to do, and, with the consent of the bank, did,
when the checks were drawn on the fund.   By the bank,
Hinkley & Norris and the check holders, the fund should be
regarded as being in the possession and control of the bank.
Equity should regard that as done which the parties intended
to accomplish by what they did.

But, as we have said, the order in favor of the bank un-
doubtedly was sufficient to create an equitable assignment of
the whole fund as security for advances, and, to the extent of
the latter, it was clearly irrevocable, because the county and
all parties had notice of and acted under it.   This is so, al-
though the bank was not in possession of the fund, and, in
one sense, was a mere collecting agent for Hinkley & Norris.
The checks were orders on the bank to pay the payees a por-
tion of the fund, the whole of which as against all the world,
except Hinkley & Norris, it had the right and power to con-
trol.   The bank, after the checks were given, was something
more than a mere collecting agent for Hinkley & Norris, the
drawers of the checks.   In a sense it was not the agent of
the drawers of the checks, but the agent of the payees to col-
lect such fund for them.   The checks amounted to an irrevo-
cable assignment of so much of the fund as was required to
pay them.   That is to say, the assignment was irrevocable,
unless the bank and the check-holders consented that it should
be otherwise.

It is said, Hinkley & Norris had the right to pay the check-
holders with other money, and that they would then have the

power to dispose of this fund, and, because of this power, it is said, no equitable assignment was created, for the reason that the assignee must have the power of absolute and unconditional control.

But suppose one of the check-holders should refuse to receive payment of his debt when tendered by Hinkley & Norris, could he be compelled to do so? We incline to think not. He certainly could transfer his interest in the fund to another, who would thereby become vested with his rights.

He could do this without the consent of Hinkley & Norris, and, as we think, against their protest. There can be no other or greater power of control than this. An absolute owner can do no more.

No particular form of words is required to create an equitable assignment of a fund. Any thing which evinces an intent to do so is sufficient. *Moore v. Lowrey*, before cited, and *Mc Williams v. Webb*, 32 Iowa, 577; *First National Bank of Canton v. D. & S. W. R. R. Co.*, 52 Id., 378.

It is further urged that the checks were not accepted by the county or the bank. But we think notice was all that was required, and that it is immaterial whether the county had notice or not, because, as between these parties, the bank was the equitable custodian of the fund, and, as such, did accept and bind itself to pay the checks in the order of presentation out of and to the extent of the fund.

It is, perhaps, incidentally claimed, but not, we think, strenuously insisted by counsel, that there cannot be an equitable assignment of a part of a fund under any and all circumstances. It may be that the custodian of the fund would not be bound to accept an order drawn on him for a part of such fund. But we think such an assignment should and would be upheld in equity. Upon principle, it seems to us this must be so, and we think the weight of authority is in favor of such proposition. We do not deem it necessary to cite or comment on

3. ———; of part of a fund : how affected by will of custodian.

the authorities, but see *Exchange Bank v. McLoon*, 73 Me., 498, and the authorities there cited.

In the case at bar, the bank not only had notice of the partial appropriation or assignment, but consented thereto, and promised to pay. Clearly, we think, this was sufficient.

IV. Burnett & Co., on January 13, 1883, caused attachments to issue against Hinkley & Norris, and garnished the county and bank. Afterward, Hinkley & Norris assigned the fund in question to the appealing creditors, represented by Poor & Baldwin. As to a portion of the claim of Burnett & Co., the court held that they were check-holders, and that, as to another portion, they obtained no lien on the fund by reason of the attachment and garnishment proceeding. From this last ruling Burnett & Co. appeal.

If in this respect the court erred, then Burnett & Co. have priority over the appealing creditors.

To the cross-petition of Burnett & Co., setting up a lien or claim under the attachment and garnishment, the county answered, claiming that under the statute it was exempt from garnishment. Code, § 2976; *Jinks v. Osceola Tp.*, 45 Iowa, 554. It is, however, insisted that the county waived such exemption by bringing this action and making Burnett & Co. parties, and calling on them to assert any claim they had. This we regard as doubtful.

4. GARNISHMENT: county exempt from: waiver of exemption.

The question, however, remains as to whether Burnett & Co. obtained any lien on the fund in controversy under the garnishment against the bank. One thing is certain—either the county or the bank had the custody and control of the fund. We have heretofore said that in our opinion the bank was the equitable custodian thereof, although it was not in its actual possession. It therefore follows that any right or lien which attached to such fund should be protected in a court of equity.

5. ——: of fund in custody but not in possession.

When the bank was garnished, the order given the bank to receive the money from the county had not been revoked by

Hinkley & Norris. The bank, therefore, had the right to the actual custody of the fund, and we think Burnett & Co. obtained a lien on the fund in equity by the garnishee proceeding against the bank. The court, we think, erred in holding that any portion of the claim of Burnett & Co. was junior to that of the appealing creditors.

V. All the other defendants combine in resisting the claim of Sigler, or, at least, they claim that their right to the fund

6. CONTRACT for erecting court house: distribution of final payment among claimants.

is prior and superior to his. In order to determine this question, some additional facts must be stated. Hinkley & Norris and King were bidders for the court house, and, as we understand, neither of their first bids was accepted. We believe, however, that King's was the lowest. Hinkley & Norris obtained leave to put in an additional bid. Before doing so, they consulted with King, and it is pleaded that a corrupt bargain was made between them, by which King was not to bid, and that Hinkley & Norris were to divide the profits with or pay him a sum of money in consideration that he did not bid again. We do not think it has been established that such a bargain was entered into.

After the contract was awarded to Hinkley & Norris, the county insisted that it must have an "Iowa bond" from them, conditioned that they would in all respects perform the contract. Hinkley & Norris applied to King to get. them such a bond, and they agreed to otherwise secure him, and, for his services in this respect, and the risk taken, King claims that Hinkley & Norris agreed to give him $3,000. King furnished a bond which was satisfactory to the county, and the following agreement was entered into between Hinkley & Norris and King:

"This agreement, made this 25th day of April, 1879, by and between O. J. King, of Corning, Iowa, and Hinkley & Norris, of Indianapolis, Ind., witnesseth: That the parties hereto, having by their mutual efforts secured the contract for the building of the Des Moines county court house, do hereby

agree that the said O. J. King is to procure, by himself or friends, a good and sufficient bond, to be approved by the supervisors of said county, and is in turn to receive from said Hinkley & Norris an indemnifying bond to be satisfactory to him.   That said Hinkley & Norris are to take upon themselves the carrying out of said contract, and to give to said King three orders, of even date herewith, for one thousand dollars each, payable as named in said orders, and all of the balance of any profits to be derived from such contract are to belong to Hinkley & Norris."

In pursuance of this agreement, or a prior understanding, Hinkley & Norris drew three orders on the county for $1,000 each, payable to King.   The orders were subsequently taken up, and are not before us.   But it sufficiently appears that they were to be paid as the work progressed:—that is, it was expressed on the face of the orders that they were to be paid before the completion of the court house.

Hinkley testifies that King was to be paid out of the profits, and that the orders were given under the belief that $3,000 would be one-third of the profits.   This King denies; but he admits that there was some talk about profits.   Shortly afterwards, another contract was made between King and Hinkley & Norris, whereby it was agreed that, in case of the death or disability of Hinkley, "so that he was unable to carry on said work," King had the right to complete the same, and to collect of the county for that purpose a sufficient amount of the money agreed to be paid, and the residue, if anything, was to be paid to Hinkley & Norris, or their representatives.

Afterward, and in November, 1880, King surrendered the three orders for $1,000 each, in consideration of the payment to him by Hinkley & Norris of $50, and the following order given by them on the county:

"To the County of Des Moines: Please pay to the order of J. O. King, upon the completion of the new court house now

being built by us for Des Moines county, the sum of $2,750, out of any money that may be due us on final settlement.

"HINKLEY & NORRIS."

This order was accepted by the board of supervisors, and is the same order under which Sigler claims. It is not claimed that Sigler's rights are any better than King's. Upon this order Sigler brought the action at law against the county, and set up his rights in the equitable action. He claims that he should be paid in full out of the fund in controversy before the other defendants, who, however, insist that this cannot be, because King was to be paid out of the profits, and that, before there could be any profits, all persons who furnished material for the court house must be first paid.

But for the fact that the three orders were to be paid as the work progressed, and, therefore, before it could be certainly known that there would be any profits, the preponderance of the evidence, we think, as to this matter, is with the defendant material-men.

The written contract, above set out in full, clearly, we think, so indicates, and therefore confirms the evidence of Hinkley. Nor do we think the fact that the orders were made payable prior to the completion of the building is a controlling circumstance; because, as we suppose, the parties estimated that the foundation, for instance, would cost a certain amount, and that there would be so much profit in building it; and again, so much when the building was erected, and another portion when the house was completed.

There is evidence tending to show that the orders were made payable at periods corresponding to the foregoing theory. But there is evidence tending to show that one of the orders was payable in six months, and without reference to how much of the building was then done.

It is difficult to believe that Hinkley & Norris would agree to pay King $3,000, if there were no profits. If the orders were to be paid absolutely and at stated periods, without reference to profits, it is difficult to understand why King sur-

rendered the orders, and took another for a less amount, at a time when, as Hinkley testified, it had become apparent that there would be no profits. The last order was to be paid out of any money due Hinkley & Norris on final settlement. If nothing was due from the county, it is clear there could be nothing paid. But, it is said, there was due on such settlement more than sufficient to pay the order. Conceding this to be so, it is replied that the parties clearly contemplated that the court house was to be completed in accordance with the contract before anything could be paid, and that, to do this, material must be purchased, either for cash or on credit, and that it cannot and should not be presumed that the parties intended, if material was purchased on credit, that King should be paid before the material-men; that, in view of all the circumstances, the parties contemplated that the house should be completed and paid for by the contractor, and that, if there was more money than sufficient to do this, then King should be paid before Hinkley & Norris were entitled to anything.

We are forced to the conclusion that this is the only proper construction that can be given to the order, in view of all the circumstances.

The money is due Hinkley & Norris from the county only because of the fact that a material-man cannot establish a mechanics' lien against a public building. But, as to King, it is inequitable that he should be paid before such persons, and we are satisfied that it was never contemplated that he should be.

VI.  After the last order had been given to King, certain extra work was contracted for and done by Hinkley & Norris. In January, 1882, the amount due for such extra work was adjusted, and the sum of $650 was agreed upon as due. This amount was paid Hinkley & Norris by the county, and Sigler claims that he is entitled to judgment against the county for the amount above stated, because it was money due on final settlement, and, therefore, due him under the terms of the order.

THE SAME.

As no extra work had been done or contracted for when the order was given, the only final settlement contemplated by the parties was the final settlement of the then existing contract, and, when such settlement was made, the county was directed to pay the amount found due, to the extent of the order of King.

Hinkley & Norris never intended that King should receive any part of the money due for extra work, and the county never was directed to pay him any part or portion of said money. It cannot be presumed from the terms or words of the order that the county was directed to pay money to King on account of a contract which had no existence when the order was given. The order must be limited to the contract in force at the time it was given. None other was contemplated by the parties.

The decree of the circuit court is affirmed, except as to the costs.

MODIFIED AND AFFIRMED.