W. W. RANKIN, Appellee, v. A. L. SMITH, Defendant, and EMORY PLOWMAN, Garnishee, Appellant.

GARNISHMENT: Property Subject to Garnishment—Interest in
1 Selling Price of Real Estate. The contingent interest of a real estate agent in the selling price of land as a basis for his commission may be reached by garnishment, such interest not being an interest in—a right to—the land itself.

PRINCIPLE APPLIED: See No. 3.

GARNISHMENT: Liability of Garnishee—Adjudication—Election
2 of Remedies—Waiver—Estoppel. A plaintiff in execution, with issue pending as to the amount of garnishee's indebtedness to defendant in execution, may, on the garnishee's *admission* that he owes the principal defendant a sum which exceeds plaintiff's claim, proceed to try out with an intervener the one question as to who has the prior right to said admitted sum, and, if defeated by intervener, may, by causing the court to retain jurisdiction, proceed to a further trial *with the garnishee* and show, if he can, that the garnishee owes the principal defendant more than the garnishee admits. These two proceedings are not inconsistent and conflicting rights, and the exercise of the first right (a) works no adjudication of the garnishee's ultimate liability, (b) involves no election of remedies, and (c) constitutes no waiver or estoppel to exercise the second right in case of defeat on the first.

PRINCIPLE APPLIED: See No. 3.

GARNISHMENT: Liability of Garnishee—Negligence—Fraud—
3 Burden of Proof. A garnishee must not be guilty of even a constructive fraud towards the plaintiff or defendant in execution. He must not be negligent in the handling of the property of the principal defendant within his control, and must realize therefrom all that he reasonably can. Settlements as to the amount owed by him to the principal defendant, especially when made subsequent to the garnishment, must be made in good faith

towards both parties (and preferably under the eye of the court), and the burden to so show is on the garnishee.

PRINCIPLE APPLIED: Taylor, owning land, deeded the same to Plowman, in order to enable Plowman to sell it. Taylor was to have $22,330 for the land, plus 1/3 of the net profits realized over this sum. Plowman was to have for his services the other 2/3 of said net profits. Plowman enlisted Smith's help and agreed to give Smith ½ of his 2/3 of said net profits. Plowman sold the land, receiving $18,000 cash and a deed to two farms. Owing to some expenses, this required $4,665 to be realized from said two farms, in order to make up Taylor's $22,330.

At this point of time, plaintiff herein, holding a judgment for $130 against Smith, caused Plowman to be garnished. Plowman answered, denying indebtedness to Smith. Plaintiff controverted, alleging that Plowman held the two farms in which Smith had an interest of from $2,000 to $3,000, and asked that the lands be held until his judgment was paid. Plowman answered again, alleging that Smith was to have 1/3 of the net profits only after the said farms were sold and the profits determined. The court then continued the proceeding and entered an order which, in effect, authorized Plowman to sell the land and account for the net profits. Plowman did not make a sale; but, some months later, Taylor, Plowman and Smith, *without consulting with plaintiff or securing the approval of the court*, entered into an arrangement under which Plowman deeded the farms to Taylor and Taylor paid Plowman $1,000 in full satisfaction of, and as a substitute for, Plowman's former right to 2/3 of the said net profits. Plowman retained half of this for himself and half for Smith. Still later, one Donaho intervened in the garnishment proceeding and claimed Smith's $500 under an assignment antedating the garnishment. Plowman appeared and *admitted* that he owed Smith $500. Plaintiff, joined issue with intervener, and, on trial *of such issue*, plaintiff learned for the first time of the $1,000 settlement. The court ordered the $500 paid to Donaho. No exceptions to the order were taken. As part of this order, the court continued the cause for further hearing, ''upon the answer of said garnishee and objections thereto.'' Later, plaintiff filed a further pleading, controverting Plowman's answer and denying that $500 was all that was coming to Smith, and alleging (a) that the $1,000 settlement was fraudulent, and (b) that, if said settlement was made, Plowman was *negligent* in not getting more out of the property. Plowman answered anew, alleging that the judgment in favor of Donaho was an adjudication of his liability to Smith. Demurrer to this was sustained, and no exceptions were entered. Plowman again answered, additional to a general denial, that, prior to the Donaho judgment, he had disclosed that he and Smith had parted with

the interest in the proceeds of the land for $1,000, and contended that plaintiff, by going to trial on the Donaho intervention, elected to make his contest with Donaho over the $500, and thereby waived any further claim against garnishee, and that the Donaho judgment was a bar to further proceedings against garnishee. There being evidence that said settlement was not in good faith and that the garnishee did not realize fairly what he might have realized, had he followed the directions of the court, *held* that the garnishee was liable for the deficiency.

*Appeal from Wapello District Court.*—F. M. HUNTER, Judge.

THURSDAY, MARCH 9, 1916.

GARNISHMENT proceedings to hold Plowman liable to plaintiff for an amount owed by him to defendant Smith, or because of having property in his hands at the time of garnishment belonging to Smith. The trial court sustained the garnishment and rendered judgment accordingly, and the garnishee appeals.—*Affirmed.*

*Jaques & Jaques,* for appellant.

*Tisdale & Heindel, J. C. Mitchell* and *W. W. Rankin,* for appellee.

DEEMER, J.—I. On June 20, 1912, plaintiff caused an execution to be issued upon a judgment which he held against defendant Smith, in the Wapello County District Court, for the sum of $130 and costs, and caused Emory Plowman to be garnished thereunder. The garnishee appeared and answered, stating that he had no money or property in his possession or under his control, belonging to Smith. Plaintiff controverted this answer and charged that Plowman took in trade two certain tracts of land in Oklahoma in which Smith had an interest, in virtue of an arrangement whereby he was to take the title and hold one third of the value thereof over and above the sum of $4,500 for Smith. He charged that the land was worth $14,000, and that Smith's interest therein was worth from $2,000 to $3,000, and he asked that the garnishee be

ordered to hold the land until his (plaintiff's) judgment was satisfied. Garnishee then answered, pleading that he traded a farm he had owned to a man in Oklahoma, and that Smith introduced the man to him and assisted in making the trade. He also averred that in the beginning he had no arrangement with Smith as to his compensation, but finally agreed that, after he had disposed of the property he had received, cleaned up his expenses, reimbursed himself for what he paid for the land that he traded for the Oklahoma property, he would give him (Smith) one third of what remained. He also averred that no time was fixed within which the Oklahoma land should be disposed of, and that the deal had not been closed. He also said that he did not know the value of the Oklahoma property, but that there was a mortgage upon one of the farms of $4,500. In other words, according to this answer, Smith was to have one third of the profits after everything, including the mortgage upon the land, was cleared. He also pleaded that one Donaho told him after the garnishment that he had acquired Smith's interest in the land. On the strength of this answer, which was made in September of the year 1912, the court ordered a continuance of the case against the garnishee until the property in his hands was sold and the profits going to Smith were ascertained. On May 16, 1913, one W. C. Donaho intervened, filing a petition in which he claimed that Smith's rights in the Oklahoma land were evidenced by a written contract or statement signed by Plowman, of which the following is a copy:

"This certifies that I hold a deed for 320 acres of land located in Logan County, Oklahoma, acquired as follows: Said deed was obtained by me in connection with the sale of certain lands situated in Van Buren County, Iowa, as part payment of the purchase price. In consideration of the services of A. L. Smith, of Keosauqua, Iowa, who brought me the purchaser of said Van Buren County land, the said A. L. Smith has an interest in the said Oklahoma land as follows: After

the completion of the payment of the purchase price of the Van Buren County land by the purchaser, and the sale of the Oklahoma land by me, the said A. L. Smith is to have one-third of the proceeds of said Oklahoma land, after the sum sufficient, when added to the cash payment, to net me $55 per acre for said Van Buren County land, is deducted from the proceeds of sale of said .Oklahoma land, together with all expenses connected with the sale of the above described land.

"Emory Plowman."

"That thereafter and on May 23, 1912, Smith, for a valuable consideration, assigned the said contract to him (Donaho), the following being a copy of the assignment:

"Keosauqua, Iowa, May 23, 1912.
"For value received, I hereby assign and convey all right and title in and to the lands described in the hereto attached, to W. C. Donaho.

"A. L. Smith."

He also averred that the assignment was made for the purpose of securing a loan that he made to Smith, in the sum of $480. He also averred that the land had been sold, and that Plowman had in his possession about $500 belonging to the fund referred to in the written agreement. Plaintiff answered this petition of intervention and therein denied that Smith had any interest in the Oklahoma land and denied that Smith ever assigned his right in the land or to the money to Donaho. He further pleaded laches on the part of the intervener, averred that before he came into the case the property had been sequestered in payment of his (plaintiff's) claim and the matter fully adjudicated, and that the intervener, having knowledge of the proceedings, stood by and allowed plaintiff to incur expenses without saying anything of his claims, thus estopping himself from asserting his claim. On these issues, the case came on for hearing at the March, 1913, term, and,

upon the testimony adduced, the court, on June 26, 1913, made an order, from which we extract the following:

"Emory Plowman, appearing in court and upon his answer admitting that he had in his possession the sum of $500 belonging to the defendant A. L. Smith, it is ordered that the said Emory Plowman be and he is hereby required to pay said sum to the clerk of this court for the use and benefit of the said intervener, W. C. Donaho. It is further ordered that the clerk will pay the costs of this intervention proceedings, and that he pay the balance to the said W. C. Donaho, or his attorney, and said cause is hereby continued upon the answer of said garnishee and objections thereto for further hearing and trial. Signed in open court this 26th day of June, 1913."

On August 12th of the same year, plaintiff filed another paper, which he called a denial, controverting the answer of the garnishee, in which he recited the prior proceedings, and then stated:

"That on or about the 26th day of June, 1913, the said garnishee made further answer saying that he had sold said land to H. C. Taylor, who was a third party interested in said land and entitled to one third of said profits; that he sold same for the sum of $500 for the interest of said A. L. Smith and an equal amount for his said interest. Now the plaintiff comes and denies the correctness of the answer of said garnishee, denies and controverts said answer wherein he answers that the sum of $500 was all that was coming to said A. L. Smith."

He then averred that the sale of the land to Taylor was fraudulent and made with intent to cheat and defraud him (plaintiff); that the true amount received by Plowman for the land was much more than was stated; and that the sale was for such an amount that the interest which Smith had would amount to much more than plaintiff's claim and more than the combined claims of Donaho and the plaintiff. He also averred

that, if the sale to Taylor was made as claimed, it was for much less than its value and much less than he (plaintiff) had offered Plowman for the land, and that such sale was fraudulent and void. He also pleaded negligence on the part of Plowman in handling the property if he got no more for it than he claimed, and he asked judgment against the garnishee for the amount of his (plaintiff's) judgment. Plowman then filed a pleading called a plea in abatement, in which he set forth the judgment of the court rendered on June 26, 1913, claiming that this amounted to an adjudication as to the sum owed to Smith, or his assignee, Donaho, and also a holding that Donaho was entitled to the amount. A demurrer to this plea filed by plaintiff was sustained. Thereupon, Plowman filed an answer, additional to a general denial, in which he averred that, before the first trial above referred to, he (the garnishee) had disclosed the fact that he and Smith had parted with their interest in the proceeds from the sale of the Oklahoma land to one Taylor for the sum of $1,000, and recited the pleadings thereafter had and the first trial, and contended that plaintiff elected to make his contest with intervener over the $500 and waived any further claim against this garnishee, and averred that the judgment in favor of Donaho was and is a bar to further proceedings against him. He also pleaded that he never had any property of any kind in his hands belonging to Smith until the sale to Taylor, and that this amount had already been awarded to Donaho, the intervener. Again the case went to trial on these issues, resulting in a judgment for plaintiff against the garnishee, in the sum of $335.45 and costs, the intervener, Donaho, having no part in this second trial. The appeal is by the garnishee, Plowman, alone. As will be observed the case is unusual and complicated and the pleadings extensive, but the main questions are not many, although a multitude are argued.

The facts are that one H. C. Taylor owned the Iowa land which was traded for the Oklahoma property, and he employed

Plowman, a real estate agent, to dispose of it for him. By the terms of their agreement, Taylor was to have $22,330 for the Iowa land, and if anything was received over and above that amount, Taylor was to have one third and Plowman two thirds. Plowman arranged with Smith to assist in disposing of the land, and was to give him one half of his earnings— one third of the net profits. In order to more expeditiously handle the land, title was taken in the name of Plowman; and when the exchange was made for the Oklahoma land, title to that land was also taken in Plowman's name. The purchaser of the Iowa land gave $18,000 cash and the two Oklahoma farms therefor, the farms standing for $4,330 of the amount due to Taylor. There were also some additional expenses which, added to the $4,330, made the Oklahoma property stand for $4,665. There is considerable controversy as to the value of the Oklahoma lands, to which we shall hereafter refer. Whatever the fact here, it appears that, after the garnishment was run, and while the proceedings were pending, Plowman and Smith agreed with Taylor to accept in full of their claims against him or to the land, the sum of $1,000. The price having been agreed upon, the $1,000 was paid to Plowman, and Plowman deeded the Oklahoma land to Taylor. Practically all of the half of this amount going to Smith was awarded to the intervener, Donaho, leaving plaintiff with nothing, unless he be permitted to charge the garnishee with more than he obtained from Taylor, on the theory that he negligently handled the property to the prejudice of both Smith and plaintiff, or that both Smith and he entered into a fraudulent scheme to defraud the plaintiff and covinously accepted less than they were entitled to; or that the three, Taylor, Plowman and Smith, were all involved in a fraudulent scheme to cheat and defraud plaintiff of the fruits of his garnishment. Incidental to the main questions are some matters of procedure which must first be determined.

II. It is argued that, Smith had an interest in the land to which Plowman obtained title, and that Plowman was not

subject to garnishment because he held the title. It is mani-
fest that Smith never had any interest, title
or right to the land itself. All that he was
entitled to was a part of the proceeds of the
sale thereof over a given amount as compen-
sation for his services in finding a purchaser
for the land in Iowa. This did not create an
interest in the land. Plowman held the legal title at the time
of garnishment in trust, perhaps, for the owner Taylor, and
could have undoubtedly sold for cash or its equivalent and
given good title. If he sold, he was bound to divide his share
of the profits with Smith and was under obligation to Smith
to try to make a sale. He was under a contingent liability to
Smith at the time of garnishment, but the amount thereof,
if any, could be determined only upon a sale of the land. In
such circumstances, we think that he was subject to garnish-
ment. The title to the property and the constructive pos-
session thereof being in him, in trust, for the purpose of sale,
and the defendant Smith having a contingent interest in the
purchase price, that interest could be reached by garnishment,
although the property itself could not have been taken on
attachment because Smith had no tangible interest therein.
Plowman's liability arose under his agreement with Smith,
which was consummated before the garnishment notice was
served. It is not a case where the debt was created or the
interest arose after garnishment, as in some of the cases cited
by appellant's counsel. As sustaining these views, see *Penny-
backer v. Leary,* 65 Iowa 220; *County of Des Moines v. Hink-
ley & Norris,* 62 Iowa 637; *Miller v. Kendig,* 55 Iowa 174;
*McDonald v. Creager,* 96 Iowa 659; *Buck-Reiner Co. v. Beatty,*
82 Iowa 353; *Allen v. Rees,* 136 Iowa 423; *Richards v. Grin-
nell,* 63 Iowa 44; *Howard County v. Kyte,* 69 Iowa 307. The
cases differ essentially from *Smith Lumber Co. v. Scott County
Garbage Co.,* 149 Iowa 272, and *What Cheer Savings Bank v.
Mowery,* 149 Iowa 114, and other like precedents, in that, in

1. GARNISH-
MENT: prop-
erty subject
to garnish-
ment: inter-
est in selling-
price of real
estate.

these cases, there was at the time of garnishment no liability, contingent or otherwise, on the part of the garnishee to the attachment or execution defendant.

III.   Before actual trial on the issues between plaintiff and the garnishee, the garnishee had transferred the land to Taylor, in virtue of the settlement had between Smith and Plowman on the one side and Taylor on the other, whereby Smith and Taylor received $1,000 for their services, which $1,000 was to be divided equally between Plowman and Smith, and it is this $500 which is referred to in the petition of intervention filed by Donaho. The case as to the garnisher had been continued for further answer of the garnishee until the property was sold and the profit going to Smith was ascertained.   This order of continuance was entered October 17, 1912.   The garnishee and Smith made the settlement with Taylor in December of the same year, although the deed to Taylor was executed on October 28th.   The garnishee did not disclose the fact of his transfer and settlement with Taylor so that it became of record, until some time in the latter part of May, 1913, when he was called as a witness upon the trial of the issues joined between plaintiff and intervener, Donaho, although Donaho, in his petition of intervention filed May 16, 1913, recited that Plowman, the garnishee, had sold the land, and then held $500 belonging to Smith, which had been assigned to him (intervener) as before stated.   During the latter part of May or the first of June, 1913, a trial was had on the issues joined between plaintiff in garnishment and the intervener, Donaho, the record reciting the garnishee's appearance in court and his admission of having in his hands $500 belonging to Smith, as hitherto stated, and the order heretofore quoted over date of June 26, 1913, was entered, no exceptions being taken to that order by anyone.   It will be noticed that this order expressly continued the case upon the answer of the garnishee and the objections thereto for further hearing and trial.   Issue had

2. GARNISH-MENT: liability of garnishee: adjudication: election of remedies: waiver: estoppel.

been pending on the correctness of garnishee's answer since Aug. 12, 1912; and on Aug. 12, 1913, plaintiff filed his final and additional denial controverting the answer of garnishee. In this he, for the first time, challenged the settlement made between Plowman, Smith and Taylor, the reason assigned being that he did not know of it until the matter was disclosed on the trial of the issues between him and the intervener, Donaho. Following this, Plowman filed his plea in abatement, in which he alleged that the whole matter of his indebtedness had been adjudicated upon the first trial; that is, the trial on the issues between plaintiff and intervener. A demurrer to this plea was sustained, but no exception was taken to the ruling. Thereafter, the garnishee filed his final answer, which he called an additional one. In this he pleaded that plaintiff had elected his remedies, waived all claims except to the $500, and was estopped from claiming more from the garnishee than the $500, which he (the garnishee) had admitted was in his possession. It was upon this record that the final trial was had. Among other things, it is claimed for appellant: (a) That under this record plaintiff's claim was adjudicated on the trial of the issues between plaintiff and intervener; (b) that in any event plaintiff had an election to claim the $500 as the extent of the garnishee's liability or to join issue on the amount due; that he could not make both claims; and, having gone to trial on the issues between himself and the intervener, he made his election to treat the garnishee's liability as being for but $500, and, having been defeated on that trial, he cannot now say that the garnishee's liability is for more than the $500.

He also claims a waiver and estoppel on plaintiff growing out of these facts.

The claim of former adjudication is easily disposed of. In the first place, the trial court sustained a demurrer to the pleading setting up this defense, and no exception was taken to the ruling. Next, the court in its order expressly continued the case on the issues joined between plaintiff and the

garnishee, thus reserving the question as to the garnishee's ultimate liability; and finally, the order expressly recites that the only issues tried and determined were those between plaintiff and intervener to the funds which the garnishee admitted were in his possession. At that very time, there was an issue between plaintiff and the garnishee as to the amount of the garnishee's liability and, as we have already seen, the case on that issue was continued. The claims of election of remedies and waiver and estoppel are closely allied to the proposition last discussed, although it is bottomed upon the proposition that plaintiff had an election as to which of two inconsistent and conflicting remedies he would adopt, and that, having adopted the one, he could not, after being defeated, mend his hold and take another inconsistent position. The underlying principles are well understood, and the only question here is, Was plaintiff in a position where he was required to elect, and did he, by trying out the issue between him and the intervener, take a position inconsistent with his present claim? The garnishee at that time had admitted a liability to Smith in the sum of $500 and said that he was indifferent as to who got the money. At the same term, or at least as soon as plaintiff was advised that the garnishee was claiming a limited liability, he (plaintiff) filed an answer or pleading controverting this claim of the garnishee. Notwithstanding this, plaintiff and Donaho, on plaintiff's motion, tried out the issues between them as to who was entitled to this $500; the court, as we have seen, reserving the question as to the ultimate liability of the garnishee. It will be observed that the $500 which the garnishee admitted was in his hands was adequate and sufficient to pay either claim made thereto; that is, if plaintiff had been successful on the trial of the issues between him and Donaho, it would not have been necessary for him to have any further controversy with the garnishee, for he would have had enough to satisfy his claim. Doubtless Donaho was in no position to challenge the garnishee's answer, for he was merely an inter-

vener in the case; at any rate he did not challenge it, for, if he had a valid assignment from Smith antedating the garnishment, the $500, admitted by the garnishee to be due, would substantially take care of his claim of $480, for which amount he held the Smith claim as collateral security. We are of opinion that, under this record, plaintiff should not be held to have concluded himself by going to trial on the issues between him and Donaho. Had he been successful, there would have been no need for further litigation with Plowman, the garnishee, for he would have had enough to pay his claim. In trying out the issues between him and Donaho, plaintiff was not estopped from then and thereafter asserting that the garnishee was under a greater liability to Smith than he admitted in his answer. The trial court made it clear that the issue between plaintiff and the garnishee, which had not been withdrawn, was reserved for future consideration; and we think it clear that the trial of an issue between plaintiff and the intervener as to who was entitled to the $500, admitted by the garnishee to be due to Smith, was not, under this record, inconsistent with plaintiff's claim then made and of record that, although the garnishee admitted to be indebted to Smith in the sum of $500, nevertheless he owed a much larger sum— a sum sufficient to take care of both claims. The garnishee was in no manner prejudiced by such a course of procedure, and, at the time of the trial of the issues between plaintiff and intervener, was in no manner interested in what the court should decide. He could not insist at that time that the full amount of his liability be determined, for the parties immediately concerned did not see fit to try that issue. Until the matter came on, on the issue joined between plaintiff and the garnishee, he was entirely indifferent as to the result, and was in no manner prejudiced, no matter what order was made in that case. So that there was no adjudication, no election of remedies, no waiver and no estoppel.

IV. This brings us down to the real merits of the contro-

versy. After the notice of garnishment was served, and after
the garnishee had filed an answer setting forth how he held
the Oklahoma lands, and before his transfer

3. GARNISH-
MENT: liabil-
ity of garni-
shee: negli-
gence: fraud:
burden of
proof.

of the title thereto, the court made the order
which, in effect, authorized the garnishee to
make sale of the Oklahoma lands and to
account for the proceeds thereof. This was
done October 17, 1912. Within a few days or weeks there-
after, he transferred the title to Taylor. Thereafter, and
about December 12, 1912, he met Taylor and Smith at
Ottumwa, and the three made a settlement whereby Plowman
and Smith agreed to accept from Taylor the sum of $1,000 in
full for their interest in the prospective profits growing out
of the exchange of the Oklahoma property. This amount was
paid by Taylor to Plowman by check, and settled the transac-
tion among the three. On the basis of this settlement, Plow-
man admitted his liability to Smith in the sum of $500. It is
now insisted by plaintiff that Plowman, having been garnished
as a debtor of Smith, and having authority from the court
simply to sell the land and ascertain the profits, was without
power to make such a settlement, and that, if he had such
power, he negligently exercised it to the prejudice of plain-
tiff, and that the settlement was fraudulent and void, made
with the purpose to wrong and defraud the plaintiff, and that
the garnishee should be held liable at least to the extent of
plaintiff's judgment.

These were the issues on which the matter was finally
tried, resulting in the order appealed from. The case is
unusual and peculiar in its facts and, in so far as there is a
conflict in the testimony or the inferences to be drawn there-
from, we must, in view of the order made by the trial court,
adopt that conclusion most favorable to plaintiff. ·At the time
of the garnishment, Plowman held the legal title to the land
under the following agreement with Taylor:

"Contract by and between Emory Plowman of Van
Buren County, Iowa, and Henry C. Taylor of Bloomfield,

Iowa, witnesseth: The said Plowman has purchased from said Taylor the farm known as the J. N. Morton farm about two miles south of Keosauqua in Van Buren County, Iowa, containing about 406 acres in Sections 12 and 13, Township 68, North, Range 10 West; said Taylor has conveyed said land by deed to said Plowman.''

The consideration expressed in the deed is ''One dollar and other valuable considerations.'' By this contract the consideration is made definite, as follows:

''The said Plowman has sold said land to A. T. Chafer, who is to pay $18,000 in cash Feb. 1, 1913, and to convey to said Plowman 320 acres of land in Logan County, Oklahoma, for said Morton farm. Now it is agreed that the amount to be paid said Taylor for the said Morton farm is $55 per acre and one third of the net proceeds from the sale of the said Oklahoma land received by said Plowman from said Chafer. On Feb. 1, 1913, the said $18,000 is to be paid said Taylor. The said Oklahoma land is to be sold as quickly as possible at its fair cash market value, and as soon as it or any portion of it is sold and sufficient is realized to pay said Taylor an amount when added to said $18,000 will equal the amount of said Morton farm at $55 per acre, he shall be paid such an amount. One third of the balance received for said Oklahoma land after all expenses of selling same is deducted is to be paid said H. C. Taylor. Said Oklahoma land to be put on the market and sold as soon as deed is obtained for same.''

It is claimed by the garnishee that, having tried to sell the land to others, both before and after the garnishment, and having failed in his efforts to do so, Taylor was insisting that improvements amounting to a considerable sum should be placed upon the lands in order to sell them immediately and that he (Taylor) demanded that Plowman and Smith put up their share of the money necessary to do this; that neither he nor Smith felt like putting in their money and so informed Taylor; and that they then offered to settle with Taylor for their claims in and to the land and, as a result of their negotia-

tions, Taylor paid Plowman $1,000 and he (Plowman) released all interest in the land and all demands that he had against Taylor on account of their previous contract. A deed had already been made by Plowman to Taylor some weeks prior to this time, and Taylor still owns the land. So far as he is concerned, no one has any further claim against him. But the vital question here is: Did this settlement fix the rights of the plaintiff, or may he challenge the same in this proceeding? It will be observed that Plowman did not follow the directions of the court in making a sale of the property and a division of the proceeds. Taylor did not sell after he got the title back from Plowman. What they did was to estimate what might be coming to Plowman, had there been a sale, and to settle on that basis, giving Taylor full title to the land and absolving him from any further liability on account thereof. The matter was not submitted to the court nor to any of the parties to the litigation for their approval, and we think the garnishee had the burden of showing that he made a good-faith settlement and received approximately as much as he could have obtained had the land been sold as the court directed. Considerable testimony was taken on this proposition, and the trial court was justified in finding that he did not do so,—at least there is testimony from which such a conclusion might be found; and the nature of the action is such that we must treat this finding as conclusive. It is not necessary in such circumstances to find that Taylor, or even Smith, was guilty of any actual fraud. The question is: Did the garnishee do his duty, and did his conduct amount to a constructive fraud? There is ample testimony, if believed by the trial court, to sustain a finding that Plowman could have sold the land to plaintiff himself for much more than enough to take care of both of these claims, and we are not justified in interfering with this conclusion. The garnishee was, in virtue of his position, required to exercise at least ordinary care and prudence after being garnished to get all that he reasonably could out of the property for the plaintiff in garnishment, and he was, in a

sense, an agent of the court for that purpose. He might, of course, give away his own property, but not that of the judgment debtor. Because of the order made after he was garnished, of which no complaint is made, he was required to make sale on the best terms available, and the better plan for him to have pursued was to have the court approve his settlement with Taylor in advance of the settlement. Not having done so, the matter may be reviewed by the court. We are not to be understood as saying that we would have arrived at the same conclusion as the district court did. It is enough that the order has support in the evidence. We think that there is such support and it must be, and it is—*Affirmed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.